GRAVES TRUCKING, INC., Klink
Trucking, Inc., and Statewide
Trucking, Inc., Appellants,

v.

PUBLIC SERVICE COMMISSION OF
INDIANA, State of Indiana and Jerry
W. Bailey Trucking, Inc., Appellees.

No. 2–985A271.

Court of Appeals of Indiana,
First District.

Oct. 23, 1986.

Rehearing Denied Dec. 4, 1986.

Robert B. Hebert, Frederick D. Emhardt, Miller, Faires, Hebert & Woddell, Indianapolis, for appellants.

Norman R. Garvin, Lynne D. Lidke, Scopelitis & Garvin, Indianapolis, for appellee, Jerry W. Bailey Trucking, Inc.

NEAL, Judge.

## STATEMENT OF THE CASE

Appellant-protestants, Graves Trucking, Inc., Klink Trucking, Inc., and Statewide Trucking, Inc. (hereinafter collectively referred to as the Protestants), appeal a Public Service Commission of Indiana (Commission) decision issuing a certificate of public convenience and necessity (certificate) authorizing Jerry W. Bailey Trucking, Inc. (Bailey Trucking) to operate as a common carrier.

We affirm.

## STATEMENT OF THE FACTS

The Protestants and Bailey Trucking all operate dump truck businesses in northeastern Indiana. On June 1, 1983, Bailey Trucking filed an application with the Commission to obtain a certificate to operate as a common carrier transporting bulk commodities in dump trucks between points in Adams, Allen, DeKalb, Elkart, Huntington, Kosciusko, LaGrange, Noble, Steuben, Wabash, Wells, and Whitley counties. Upon notice of the filing of the application, the Protestants filed a notice of their intention to oppose it.

On November 2, 1983, a public hearing was held before an administrative law judge. Witnesses for Bailey Trucking included its president, Jerry W. Bailey (Bailey), and representatives of eleven companies that employ the services of Bailey Trucking. Testimony in opposition was given by the Protestants' presidents. The evidence reveals the following facts.

Bailey has been operating for seventeen years. His company services primarily homeowners and small subcontracting businesses. Bailey described his business as a buy-sell arrangement, whereby the customer contacts Bailey Trucking and places an order for a certain amount of product (usually either stone, sand, or gravel). Bailey Trucking purchases the product in its own name from a quarry, delivers the product to the customer, and spreads the product according to the customer's instructions. The customer is then billed for a lump sum, which includes the cost, delivery, and spreading of the product. The company representatives appearing in support of Bailey Trucking testified that they had employed Bailey Trucking in the past and would continue to do so. They stated that they appreciate Bailey Trucking's ability to spread the product upon delivery, its willingness to coordinate inbound deliveries of products with the removal of dirt and debris from construction sites, and its ability to respond on short notice. The customers also favor Bailey Trucking's method of billing; one invoice covering the entire service helps simplify their bookkeeping. In addition, since Bailey Trucking purchases the product only after receiving an order, it can purchase the product from the quarry nearest the customer, thus reducing delivery time and costs. Several company representatives testified that they had employed the Protestants in the past, with unsatisfactory results. Generally, the supporting witnesses testified that, given the small scale of their operations, the Protestants had not solicited their business.

The Protestants argued that they had never refused service to anyone, and that the volume of available business was insuf-

ficient to support the trucking companies already holding Commission certificates. They also claimed that Bailey Trucking's buy-sell arrangement with its customers was an illegal circumvention of the Indiana Motor Carrier Act [1] because Bailey Trucking did not maintain its own stockpiles of products; it only purchased products from quarries in response to customer orders. The Protestants also asserted that Bailey Trucking had been involved in unlawful leasing arrangements with other trucking companies.

On January 6, 1984, the administrative law judge issued a report and recommended order granting Bailey Trucking's application in its entirety. The Protestants submitted exceptions to the recommended order on January 16, and on April 20, 1984, they filed a brief in support of the exceptions and a request for oral argument. Bailey Trucking filed a brief in opposition and on June 15, 1984, the administrative law judge heard oral argument. A successor administrative law judge submitted a report and recommended order to the Commission on July 1, 1985, recommending that Bailey Trucking receive the requested operating authority. The Protestants again submitted exceptions to the recommended order. They argued that the recommended order was contrary to both the evidence and the law; specifically, the evidence does not reveal a public need or necessity for additional for-hire transportation services, and the inference that Bailey Trucking is fit to operate as a regulated motor carrier ignores the evidence establishing its history of illegal operations. Bailey Trucking responded by asserting that the evidence shows a public need for its services and there was insufficient evidence to show it had ever operated illegally.

The Commission issued its order on August 14, 1985, granting the application in its entirety. The Commission found that Bailey Trucking had the financial ability to render the service, that a public convenience and necessity exists for the service, and that existing carriers would not be unreasonably impaired by granting the certificate. The Commission also noted that despite the Protestants' complaints to the state police, Bailey Trucking had never been cited for violating the Motor Carrier Act. The Commission stated that granting the certificate would merely confirm Bailey Trucking's practices and end the confusion surrounding the legality of its operations. It is from this order that the Protestants bring this appeal.

## ISSUES

We have restated the issues presented, and they are as follows:

 I. Whether the Commission acted arbitrarily and capriciously by inferentially finding that Bailey Trucking was fit to operate as a regulated motor carrier, without determining the legality of Bailey Trucking's past operations.

 II. Whether the Commission's order granting Bailey Trucking a certificate of authority is contrary to law.

## DISCUSSION AND DECISION

ISSUE I: *Arbitrary and Capricious Act*

The Protestants argue that the Commission acted arbitrarily and capriciously by inferentially finding that Bailey Trucking was fit to operate as a regulated motor carrier, without determining the legality of Bailey Trucking's past operations. In support of their position Protestants cite two federal cases for the proposition that proof of unlawful conduct may preclude a finding that an applicant is fit, even though the applicant has never been cited for statutory violations. *Containerfreight Corp. v. U.S.* (9th Cir.1985), 752 F.2d 419; *Curtis, Inc. v. Interstate Commerce Commission* (10th Cir.1981), 662 F.2d 680. We believe that the Protestants' reliance on these cases is misplaced.

The Protestants' argument centers on the assertion that the prior operations of Bailey Trucking, the allegedly il-

1. IND. CODE 8–2–7–1 to –52.

legal buy-sell arrangements, should preclude the grant of a certificate as a matter of law. While we agree that the Commission *may* consider an applicant's past conduct in reaching its decision, we know of no authority, nor is any cited, that mandates the Commission to deny an application solely on operational history. The Commission has discretion to consider and weigh evidence concerning an applicant's past conduct along with all the other evidence before it. *See Coastal Tank Lines, Inc. v. Propane Transport, Inc.* (1981), Ind.App., 416 N.E.2d 440. The refusal to deny an application for a certificate solely because evidence of past misconduct exists is not an abuse of discretion as a matter of law.

▉ The cases relied on by the Protestants involve applicants who sought certificates of interstate authority. Interstate motor carriers are governed by federal law, which does require a finding of an applicant's fitness, willingness, and ability. 49 U.S.C. Sec. 10922(b)(1)(A). This court has recently held that such a finding is not required for an intrastate certificate. *Graves Trucking, Inc. v. Public Service Commission of Ind.* (1986), Ind.App., 490 N.E.2d 365. We determined that:

> "IND. CODE 8–2–7–15, authorizing the grant of certificates of public convenience, does not require the Commission to make a specific finding regarding an applicant's fitness, willingness and ability. IND. CODE 8–2–7–15(d)(1) only suggests that the Commission may *consider* the financial ability of the applicant to provide the requested service."

*Id.* at 374.

The Commission did make a finding concerning Bailey Trucking's financial ability, although not required to do so. The Commission stated that:

> "[t]he Applicant showed extensive experience in the transportation of commodities in bulk in Indiana intrastate commerce by reason of its seventeen (17) years of conducting buy-sell operations. The Applicant is acquainted with the bulk commodities business and has suitable equipment for the transportation of

these commodities. Furthermore, the Applicant's terminal has been sufficient to provide transportation services in the past. The Applicant also showed that it has the financial capability to render the proposed service. Applicant's Exhibit No. 4 consisted of a balance sheet prepared by R.E. Fahlsing Accountancy Corporation, which showed the financial structure of the Applicant for the twelve (12) months ending February 28, 1983. That Exhibit showed that the Applicant possesses total assets valued at $71,322. Exhibit No. 4 also showed net income for the twelve (12) month period ending February 28, 1983, as $28,596. The Applicant additionally demonstrated $8,300 worth of additions to property and equipment, a $28,425 increase in working capital funds and a $14,319 reduction in long-term debt during the same time period. The Commission finds that the Applicant is financially stable and possesses the ability to operate as a motor common carrier."

The Commission further found that "[a] grant of the Certificate in this Cause will not alter the present operation in the proposed service territory, but would simply confirm the practices established in the last seventeen (17) years."

In light of the foregoing, we do not believe that the Commission acted arbitrarily and capriciously.

ISSUE II: *Public Convenience and Necessity*

The Protestants also contend that the Commission's order is contrary to law.

▉ Our standard of review in these matters is set forth in IND. CODE 8–1–3–1, which provides, in pertinent part, that:

> "[a]n assignment of errors that the decision, ruling or order of the commission is contrary to law shall be sufficient to present both the sufficiency of the facts found to sustain the decision, ruling, or order, and the sufficiency of the evidence to sustain the finding of facts upon which it was rendered."

This court will not weigh the evidence nor substitute its judgment for that of the Commission; our function is to examine the record to determine if there is substantial evidence upon which the Commission could have made its decision. *Coastal Tank Lines, supra.*

Bailey Trucking, as an applicant for a certificate of authority, was governed by IND. CODE 8-2-7-15(b), which provides that:

"[t]he applicant shall, at all times, have the burden of proving, by a preponderance of the evidence, except as hereinabove provided, that public convenience and necessity requires the proposed operation, and that the proposed operation will not unreasonably impair the existing public service of any authorized common carrier, or common carriers by motor vehicle, or by railroad, steam or electric, then adequately serving the same territory."

The Commission, in turn, was guided by IND. CODE 8-2-7-15(d), which states:

"[i]n determining whether a certificate shall be granted, the commission may, among other things, consider the following:

1. The financial ability of the applicant to furnish adequate service.
2. Whether existing transportation service is adequate.
3. The effect upon existing transportation, and particularly, whether the granting of such application will or may seriously impair such existing service.
4. The volume of existing traffic over the route proposed by the applicant.
5. The effect and burden upon the highways and the bridges thereon, and the use thereof by the public.
6. Whether the operations will threaten the safety of the public or be detrimental to the public welfare."

However, this court has specifically refused to formulate minimum standards of proof upon which a finding of public convenience and necessity must be based. *Associated Truck Lines, Inc. v. Public Service*

*Commission of Ind.* (1986), Ind.App., 492 N.E.2d 704; *V.I.P. Limousine Service, Inc. v. Herider-Sinders, Inc.* (1976), 171 Ind.App. 109, 355 N.E.2d 441.

The Protestants argue that the Commission's findings are insufficient to sustain its decision to grant the certificate of authority. The Commission made findings on eight factors in support of its ultimate conclusion that public convenience and necessity required the services of Bailey Trucking. The findings were that Bailey Trucking:

"1. Possessed sufficient financial ability to render its services;
2. Was sufficiently experienced in transporting bulk commodities;
3. Owned and operated suitable equipment;
4. Had served the supporting shippers in the past;
5. Had been relied upon by the supporting shippers;
6. Provided a quality service;
7. Engaged in the spreading of stone; and
8. Coordinated in-bound bulk commodity deliveries with out-bound waste and debris removal."

The Protestants argue that four of the factors, numbered one, two, three and six above, show only convenience and not necessity. They also assert that the factors numbered seven and eight above are invalid because those services are not transportation services. Finally, the Protestants claim that factors numbered four and five show only a preference for Bailey Trucking's services, not a necessity.

■ We note that a stated public policy of the Indiana Motor Carrier Act is "to promote safe, adequate, economical, and efficient service and foster sound economic condition in transportation and among the several carriers." IND. CODE 8-2-7-5(2). Because "public necessity" is a concept not susceptible to rigid or precise definition, the evidentiary criteria upon which public convenience and necessity are based in any given case are left in large measure to the

informed discretion of the Commission. *V.I.P. Limousine, supra.* The public needs and demands are gauged by many variables, and this court has held that factors relating to so-called "non-transportation" services may be considered. *Associated Truck Lines, supra; Graves Trucking, supra.* In essence, the Protestants ask us to limit the Commission's discretion by imposing inflexible standards for a finding of public convenience and necessity. We decline, as that is a legislative prerogative.

 The Protestants also challenge the sufficiency of the evidence to sustain the Commission's findings. Based upon our standard of review, set forth earlier, we conclude otherwise.

Our examination of the record reveals substantial evidence to support the Commission's findings. At the hearing Bailey submitted a list of over sixty of Bailey Trucking's customers; eleven of them appeared at the hearing and testified in support of the application. Bailey Trucking's customers are small contractors and individual homeowners. These witnesses stated that they had employed Bailey Trucking's services in the past pursuant to buy-sell agreements and would remain customers because of the unique services Bailey Trucking provides, not available elsewhere. Bailey Trucking supplies, transports, and spreads the bulk commodities, and is willing to coordinate delivery with the backhauling of dirt and debris from the construction site. In addition to being more efficient, Bailey Trucking bills the entire operation on one invoice, which simplifies bookkeeping. In general, the witnesses' business was not solicited by the Protestants, the Protestants concentrating on larger construction and highway projects. Several of the witnesses testified that they had employed the Protestants in the past, but the Protestants had either been unwilling or unable to provide the same type or quality of service that Bailey Trucking does.

Moreover, the record reveals that the Protestants have limited operating authority to meet the demand for service. Protestant Klink Trucking, Inc. does not have operating authority in seven of the twelve counties for which Bailey Trucking sought authority. Protestant Graves Trucking, Inc. can only provide service within a fifty-mile radius of Bluffton and otherwise only within a thirty-five-mile radius from point of origin to point of destination. Similarly, Protestant Statewide Trucking, Inc.'s authority is limited to a fifty-mile radius from point of origin to point of destination. The evidence shows that much of Bailey Truckings business is beyond these limits.

 The Protestants ask us to rejudge the credibility of witnesses, reweigh the evidence, and reach a different conclusion from that of the Commission. This we may not do. Because substantial evidence exists to support the Commission's order, we affirm its grant of the certificate of authority to Bailey Trucking.

Judgment affirmed.

ROBERTSON, P.J., and RATLIFF, J., concur.