**TOWN OF MERRILLVILLE BOARD OF ZONING APPEALS, Bruce Sayers, Environ Property Owner's Association, Inc., Gainer Bank, N.A., Methodist Hospital, Inc., 84th Drive Partnership, A.J. Hayes, P.R. Unni, M.D., Raymond Lennertz, and Marv Downey, Respondents–Appellants,**

v.

**PUBLIC STORAGE, INC., Petitioner–Appellee.**

No. 45A04–8911–CV–495.[1]

Court of Appeals of Indiana, First District.

March 28, 1991.

---

**1.** This case was reassigned to this office on January 2, 1991.

Fred M. Cuppy, Kathryn D. Schmidt, Phillip A. Norman, Burke, Murphy, Costanza & Cuppy, Merrillville, for respondents-appellants.

David E. Wickland, Munster, John P. Bushemi, Merrillville, for petitioner-appellee.

BAKER, Judge.

Petitioner-appellee Public Storage, Inc. (Storage) sought a special exception from respondent-appellant Town of Merrillville Board of Zoning Appeals (the Board) to build a public storage facility. After hearing remonstrances from a number of residents who are also appellants in this action, the Board denied the special exception. Storage then petitioned for a writ of certiorari from the trial court, and the trial court granted the petition.

 The Board now appeals, raising a sole restated issue for our review: whether the trial court's judgment was contrary to law.[2] We affirm.

## FACTS

Storage is the contract purchaser of a parcel of land on Broadway in Merrillville. The land was zoned Commercial C–3, and the zoning ordinance allowed public storage facilities as a special exception in the C–3 area. Storage filed an application for a special exception for a public storage facility. The Merrillville Municipal Code (the Code) provides the statutory prerequisites to the granting of a special exception:

1. The establishment, maintenance, or operation of the special use will not be

---

2. The Board failed to enter its findings of fact on Storage's application for a special exception within the five day period required by IND. CODE 36–7–4–919. The trial court found this failure to be gross negligence on the Board's part. The Board challenges this ruling.

We agree with the Board that, in this case, without some prejudice to a party adversely affected by the late entry of the findings of fact, the late entry is harmless error. Because the trial court did not rely on the late entry as the sole rationale for its decision, however, we need not address the issue further. We hasten to point out, however, that the Board entered its findings only four days late, and while no harm came from the late filing, we cannot condone any violation of the law. Boards of zoning appeal around the state would be ill-advised to rely on this footnote as justification for late entry of findings.

detrimental to or endanger the public health, safety, morals, comfort or general welfare, and is in accordance with the comprehensive plan.

2. The special exception will not be injurious to the use and enjoyment of other property in the immediate vicinity for the purposes already permitted nor substantially diminish and impair property values within the neighborhood.

3. The establishment of the special exception will not impede the normal and orderly development and improvement of surrounding property for uses permitted in the district.

4. Adequate utilities, access roads, drainage, and/or other necessary facilities will be provided.

5. Adequate measures will be taken to provide ingress and egress so designed as to minimize traffic congestion in the public street.

6. The special exception shall in all other respects conform to the applicable regulations of the district in which it is located and the board shall find that there is a public necessity for the special exception.

*Record* at 96.

The Board held a hearing on the application. At the hearing, Storage presented evidence to show its compliance with the requirements of the Code, and a number of remonstrators, in person and by counsel, expressed their disapproval of Storage's plan. After the hearing, the Board denied the application, and Storage petitioned for and received a writ of certiorari. The Board now appeals. Additional facts will be supplied in our discussion.

## DISCUSSION AND DECISION

### GENERAL PRINCIPLES

 This is yet another zoning case that illustrates the distinctions between applications for variances and applications for special exceptions. As this court noted in *Boffo v. Boone Cty. Bd. of Zoning Appeals* (1981), Ind.App., 421 N.E.2d 1119, *trans. denied,* a variance is a deviation from the legislated zoning classification applicable to a given parcel of land, while a special exception is a use permitted under the zoning ordinance upon the showing of certain statutory criteria. *Id.* at 1123. The granting of a variance is a matter committed to the discretion of boards of zoning appeal, whereas the granting of a special exception is mandatory once the petitioner shows compliance with the relevant statutory criteria. *Id. See also Porter Cty. Bd. of Zoning Appeals v. Bolde* (1988), Ind. App., 530 N.E.2d 1212.[3]

 Despite the substantive distinctions, however, the review of board decisions regarding variances and special exceptions is the same: "To reverse, there must be an abuse of discretion, or a lack of substantial evidence to support the Board's decision or an error of law in such decision." *Boffo, supra,* at 1125. The actions of a board are cloaked with a presumption of correctness, and neither this court nor the trial court may substitute its judgment for that of the board, though we necessarily review both the trial court's and the board's findings of fact. *Porter Cty. Bd. of Zoning Appeals, supra,* at 1215. Moreover, when, as here, the trial court enters specific findings of fact and conclusions of law, we determine first whether the evidence supports the findings and, second,

3. Special exceptions, however, are not all of one nature. Some special exception ordinances, like the one here, are akin to variance ordinances, leaving the local board with a discernible amount of discretion. These are the ordinances that require the petitioner to show, for example, that the proposed use will not injure the public health or welfare. *See Ayers v. Porter Cty. Plan Com'n.* (1989), Ind.App., 544 N.E.2d 213, 218, n. 9.

Other ordinances, which are regulatory in nature, permit the local board no discretion. In these instances, the petitioner must show compliance with regulatory requirements, such as structural requirements, and the board must issue the exception. *Metropolitan Bd. of Zoning Appeals of Marion Cty. v. Shell Oil Co.* (1979), 182 Ind.App. 604, 395 N.E.2d 1283. *See also Board of Zoning Appeals of Elkhart Cty. v. New Testament Bible Church* (1980), Ind.App., 411 N.E.2d 681 (board could not deny church's application once church showed compliance with regulatory provisions of the ordinance, including height and setback restrictions).

whether the findings support the judgment. We will not reverse the trial court unless our review of the record leaves us with the firm conviction the trial court made a mistake. *Id.*

## MERRILLVILLE MUNICIPAL CODE PROVISIONS

■ Reviewing the evidence and the Board's findings in conjunction with the six elements of the Code, the record amply supports the trial court's findings and judgment that Storage met the requirements for a special exception under the Code. As we begin, we note the distinction between a board's specific findings of fact and its ultimate findings, or determinations. The determinations are the conclusions that a petitioner has or has not met the given statutory criteria. The specific findings represent the supporting basic facts upon which the determinations are based. *See Porter Cty. Bd. of Zoning Appeals, supra,* at 1215–16.

### I. *Health, Welfare, Morals, and Safety*

First, regarding the requirement that the proposed special exception be in accord with the comprehensive plan and not detrimental to health, welfare, morals, or safety, the Board determined the storage facility was in conformance with the comprehensive plan. The Board did not comment on the facility's effect on the community's health, welfare, morals, or safety, but simply found the use would be better suited in an industrial area. Indeed, no assertion was ever made that the storage facility would have an adverse effect on the community's health, welfare, morals, and safety. Accordingly, the trial court correctly judged that the Board's determination was an abuse of discretion.

### II. *Affect on Property Values*

■ Second, the Board determined Storage had failed to show the storage facility would not diminish property values. The only evidence presented to the Board, however, was that the facility's effect on neighboring property value would either be neutral or positive. The remonstrators merely expressed their worry that the facility would hurt their property; they presented no evidence to that effect. The remonstrators, of course, were not required to present *any* evidence, but that is not the point. Once a petitioner has established its right to a special exception by presenting sufficient evidence of compliance with relevant statutory requirements, the exception must be granted. *Porter, supra; Boffo, supra.*

In other words, if Storage had merely proffered testimony to the effect that it could not envision a decline in property values, it would have failed in its burden. Similarly, if the remonstrators had countered Storage's expert testimony with contrary expert testimony of their own, the resolution of the question would have been a matter for the Board, with its expertise in zoning matters, to resolve. In that case, the Board's determination, being supported by evidence, could not be reversed on review. Here, however, there was no evidence to support the Board's determination and the trial court properly found the Board's finding to be an abuse of discretion.[4]

### III. *Impediment to Development*

Third, Storage proved its proposed use would not impede the development of the surrounding properties for uses permitted in the district. In deciding to the contrary, the Board merely found the storage facility was not consistent with other uses in the vicinity, and that the storage facility would be more appropriately placed in an industrial area so as not to discourage office and retail development along the Broadway corridor. In making this finding, it appears the Board relied on the remonstrators' re-

---

4. Our remarks should not be misconstrued as placing a burden on remonstrators to come forth with contrary evidence in situations such as this. A board may of course choose to disbelieve a petitioner's testimony, giving specific reasons for its disbelief. Here, however, the Board found that Storage had presented no evidence, *Record* at 118, and this is simply not the case: Storage presented the expert testimony of a real estate appraiser stating that, at the very least, Storage's proposed facility would not harm property values. *Record* at 103.

marks that Broadway is and should be a somewhat exclusive and picturesque street of offices and retail establishments. *Record* at 88, 110. As the trial court found, however, the evidence, both testimonial and photographic, reveals Broadway in the area of Storage's property is a typical urban strip, with gas stations, fast food restaurants, and doughnut shops. Indeed, the structure across the street from Storage's property is an auto tire store, which itself looks like a large warehouse. *Record* at 99, 113–15. Moreover, there was no evidence, to support the Board's ultimate finding that Storage's use would impede the development of surrounding property. Without supporting evidence, the Board's determination, as the trial court concluded, was an abuse of discretion.

### IV. *Provisions for Infrastructure*

Fourth, the Board left blank the space for its determination on the question of whether Storage had made adequate provisions for access roads, utilities, drainage, and any other necessary facilities. The Board's only specific finding on the question was "no comment." *Record* at 118. The evidence reveals Storage made commitments to alter its design at the request of the Merrillville Town Planning Office and to provide Merrillville with $5,000 for use in storm drainage projects. *Record* at 98. Additionally, Storage planned to build an access road for the facility. *Record* at 99. Moreover, Storage had made arrangements for landscaping, on-site security, and facade and roofing materials which conformed to the general commercial uses in the area. *Record* at 98–100. There was no contradictory evidence.

■ Normally, the remedy for inadequate specific findings is to remand to the Board for further findings. *Porter Cty. Bd. of Zoning Appeals, supra,* at 1215–16; *Habig v. Harker* (1983), Ind.App., 447 N.E.2d 1114. Remand is not necessary here, however, because the Board concedes Storage satisfied the infrastructure requirements. *Appellant's Brief* at 34.

### V. *Ingress and Egress*

Fifth, the Board determined Storage had not provided adequately for measures to control ingress and egress from the site in a manner designed to reduce traffic congestion. In support of this determination, the Board found Storage had presented no evidence of ingress and egress management. Storage, however, presented the Board with its plan for managing ingress and egress with a system of secured access to the facility coupled with the use of a frontage road and a limited number of turning points from Broadway onto the frontage road. *Record* at 100. Storage also raised the possibility of using deceleration lanes under Indiana Highway Department auspices. *Record* at 107. Once again, the Board's finding was contrary to the evidence before it. The trial court properly concluded the determination resting upon the improper finding was an abuse of discretion.

### VI. *Public Necessity*

Finally, the Board determined Storage had failed to show a public necessity for its use because "[a]lthough [Storage] presented evidence that a commercial market does exist for public storage, [Storage] did not present any evidence which suggests that public storage units are a public necessity." *Record* at 118. This determination reflects a mistaken view of what constitutes a public necessity.

■ The Code does not define "public necessity," but the phrase is akin to the language of IND.CODE 8–2–7–15, which concerns the applications by common carriers for certificates of public convenience and necessity. While we are concerned here with questions of zoning ordinances and the functioning of local boards, and the certification process involves the shipment of goods under a state board's authority, cases deciding certification questions are nonetheless instructive for our purposes. This is so because the concepts of administrative action and review are the same in either situation and because we treat ordinances with the same deference we show statutes. *Day, et al. v. Ryan* (1990), Ind.

App., 560 N.E.2d 77; *Metropolitan Development Com'n. of Marion Cty. v. Villages, Inc.* (1984), Ind.App., 464 N.E.2d 367, *cert. denied* (1985), 471 U.S. 1010, 105 S.Ct. 1879, 85 L.Ed.2d 171; *Ash v. Rush Cty. Bd. of Zoning Appeals* (1984), Ind.App., 464 N.E.2d 347, 352, *trans. denied.*

■■■ Neither Indiana's courts nor its legislature have defined precisely the meaning of public necessity "because 'public necessity' is a concept not susceptible to rigid or precise definition." *Graves Trucking v. Public Service Com'n.* (1986), Ind. App., 498 N.E.2d 1261, 1265, *trans. denied.* Accordingly, "the evidentiary criteria upon which public convenience and necessity are based in any given case are left in large measure to the informed discretion of the [authorized agency]." *Id.* at 1265–66. Similarly, in a case such as this, wherein the local legislature has created a public necessity prerequisite for special exceptions, we will not attempt to usurp the Board's role by stating a blanket rule defining the quantum of evidence required to show a public necessity. *See V.I.P. Limousine Service, Inc. v. Herider–Sinders, Inc.* (1976), 171 Ind.App. 109, 115, 355 N.E.2d 441, 445. Nonetheless, the phrase "public necessity" does not give the Board a grant of absolute discretion to deny a special exception permit.

First, "[t]he public need must be considered in an economic and social sense. It does *not* mean that without the proposed [use], the economic or social survival of the public is threatened," and public necessity "must be somewhat liberally construed, for comparatively few things can be regarded as an absolute necessity." *Id.,* 171 Ind. App. at 116, 355 N.E.2d at 445–46 (emphasis added) (citation omitted). Second, when a board makes its decision, "[a] rational relationship between the facts found and the conclusion reached must exist and should be stated. We need then, in addition to the findings of fact, a statement of the reasons for the agency's ultimate determination." *Id.,* 171 Ind.App. at 115, 355 N.E.2d at 445 (relying on *Easley v. Metropolitan Bd. of Zoning Appeals* (1974), 161 Ind.App. 501, 317 N.E.2d 185).

The Board here failed in both of the above requirements. Storage presented evidence of the market need for its proposed use, an important factor in determining necessity. The Board, though, drew a sharp distinction between economic need and public necessity, apparently construing public necessity to mean absolute necessity. Under this interpretation, special exceptions would be virtually destroyed because to demonstrate public necessity, a petitioner would have to show the health, welfare, safety, and morals of the community would suffer without the petitioner's proposed use. This will not do; as we have said, public necessity is not absolute necessity. *See V.I.P. Limousine Service, supra.* The Code, enacted by the local legislature, contains provisions for special exceptions as allowed by IND.CODE 36–7–4–918.2. The Board's discretion is not so great as to effectively remove those provisions by administrative fiat.

The Board's finding on public necessity is also deficient because there is no rational relationship between the facts found and the conclusion reached. The Board found "the proposed use will adversely affect surrounding property values due to the rapid depreciation and deterioration of structures which would be located on the premises." *Record* at 118. This determination was a mischaracterization of the evidence. There was evidence from one of the remonstrators that personal storage facilities are allowed to deteriorate if not profitable, *Record* at 110, but the same might be said of most commercial uses, and the evidence does not support the Board's blanket statement that such structures inevitably suffer "rapid depreciation and deterioration."

■■■ Finally, some of the basic rules concerning zoning ordinances are particularly relevant on this point. Zoning ordinances are in derogation of the common law, and accordingly are to be construed in favor of the free use of land. *Ayers v. Porter Cty. Plan Com'n.* (1989), Ind.App., 544 N.E.2d 213. We will not extend restrictions on land use by implication. *Id.* Here, to allow the Board's interpretation of public necessity to prevail would unduly restrict the free use of land by leaving one of the statutory criteria for a special excep-

tion virtually unobtainable. We are also required, if at all possible, to construe zoning ordinances to find their validity. *Carpenter v. Whitley Cty. Plan Com'n.* (1977), 174 Ind.App. 412, 367 N.E.2d 1156. The Board's interpretation is so broad that there is no standard by which the Board is guided in the exercise of its discretion, thereby effectively invalidating the "public necessity" section of the Code. Administrative agencies must have sufficient guiding standards to function validly. *Whitesell v. Kosciusko Cty. Bd. of Zoning Appeals* (1990), Ind.App., 558 N.E.2d 889; *Indiana Alcoholic Beverage Com'n. v. McShane* (1976), 170 Ind.App. 586, 354 N.E.2d 259.

### CONCLUSION

The evidence reveals Storage met its duty to show its compliance with all the statutory prerequisites to the receipt of a special exception. Accordingly, the exception must issue and the trial court is affirmed.

MILLER and SHIELDS, JJ., concur.