S & S ENTERPRISES, INC.,
Appellant–Petitioner,

v.

MARION COUNTY BOARD OF
ZONING APPEALS, Board No.
2, Appellee–Respondent.

No. 49A04–0207–CV–350.

Court of Appeals of Indiana.

May 15, 2003.

C. Duane O'Neal, Christopher R. Taylor, Lewis & Kappes, Indianapolis, IN, Attorneys for Appellant.

Stephen Neff, Indianapolis, IN, Attorney for Appellee.

SHARPNACK, Judge.

S & S Enterprises, Inc. ("S & S") appeals the trial court's judgment in favor of the Marion County Board of Zoning Appeals, Board No. 2 ("BZA"). S & S raises one issue, which we restate as whether the trial court erred by failing to reverse the BZA's denial of the petition for an extension of a special exception filed by S & S. We affirm.

The relevant facts follow. On October 20, 1987, an Air Force jet crashed into the Ramada Inn at 5455 West Bradbury Avenue in Indianapolis. As a result of the crash, the hotel was demolished. The property is zoned I–3–S, medium industrial suburban. In 1989, the property owner, S & S, filed a petition for a special exception to permit a commercial pay parking area to service the Indianapolis Interna-

tional Airport. At a hearing on the petition, four remonstrators were present. According to minutes of the hearing, a representative of the Park Fletcher Industrial Park, which adjoins S & S's property, objected that the proposed use would violate land use covenants and expressed concerns regarding additional traffic into the area. An appraiser testified that the parking lot would not benefit the industrial park and could adversely affect the property values in the adjacent area and create an eyesore in the area. However, staff of the Department of Metropolitan Development recommended approval of the petition. The BZA approved the special exception subject to the following conditions:

1. All use shall comply with the permitted uses of the Industrial District Zoning Ordinance or that use specifically requested and [described] in this petition.

2. All development shall comply with Industrial Districts Zoning Ordinance standards specifically modified by this variance.

3. A landscape plan shall be submitted for Administrator's approval prior to an [Improvement] Location permit being issued. All approved landscaping shall be completed prior to May 31, 1990 and shall be maintained at all times thereafter.

4. All development standards of the Commercial Parking Facilities Code shall be met.

5. All lighting shall only be directed onto the site.

6. All parking spaces shall be a minimum of nine feet by twenty feet.

7. All development shall be as per the amended site-plans filed dated January 26, 1990.

8. There shall be no storage of inoperable vehicles on the site.

9. The grant of this petition shall be limited to a temporary period of ten years, expiring February 6, 2000.

10. Unless an Improvement Location Permit is obtained within one year or prior to construction, whichever occurs first, this variance is void.

Appellant's Appendix at 36–37. Consequently, the special exception was granted for a ten-year period to expire on February 6, 2000.

On October 12, 1999, S & S requested that the BZA extend the special exception to February 1, 2005, pursuant to Section 2.12 of the Industrial Zoning Ordinance of Marion County ("Ordinance"). Section 2.12 provides that:

A Special Exception shall be granted following public hearing of the petition and upon the Board's determination that:

a. The grant will not be injurious to the public health, safety, convenience or general welfare.

b. The grant will not injure or adversely affect the adjacent area or property values therein.

c. The grant will be in harmony with the character of the district and land uses authorized therein.

*Id.* at 47.

Duke–Weeks Realty Corporation ("Duke–Weeks"), owner of Park Fletcher, was a remonstrator and sent a letter to the Department of Metropolitan Development detailing its concerns. Duke–Weeks noted that it had "been at odds with the tenant." *Id.* at 30. The difficulties stemmed from property upkeep problems, including lawn maintenance, clean up of graffiti, and the use of "Porta–Potty" facilities rather than permanent employee restroom facilities. Duke–Weeks wrote that its "opposition to extending the current use mainly stems from the false promises and failure to meet

various commitments that would improve the quality of the current use. At this point we have no hope that the tenant will ever adequately comply with commitments and general property upkeep that we would expect in this area." *Id.*

S & S responded to the concerns by proposing a commitment agreement and an escrow agreement. Under the commitment, S & S agreed that it would not seek further extensions of the special exception, would remove temporary "Porta–Potty" facilities from the site and construct permanent restroom facilities, would install professional barriers and signs and remove existing barriers and spray painted signs, would maintain the lawn care and landscaping professionally, and would maintain striping of the parking area in conformance with applicable development standards. *Id.* at 24. Under the escrow agreement, the tenant and S & S agreed to establish an escrow account to perform the work detailed in the proposed commitment. Despite the offer of a commitment agreement and an escrow agreement, Duke–Weeks continued to oppose the petition.

A public hearing was held on December 21, 1999. Minutes of the hearing indicate that Duke–Weeks noted that it "has had difficulty with the petitioner's ability to adhere to Park Fletcher's covenants and restrictions, [compliance] with the Sign Regulation and general maintenance of the property." Appellant's Appendix at 19. Duke–Weeks indicated that its maintenance workers had mowed portions of the property. When questioned whether the property was currently well maintained, Duke–Weeks indicated that the parking lot was covered with weeds and maintenance problems had persisted in the four to six months before the hearing.

Jeff Bellamy, Senior Planner for the Department of Metropolitan Development, stated that in 1995, the property received multiple zoning citations due to signs that did not comply with the regulations. As a result, a Stop Work Order was issued and "the owner of the site was issued civil zoning citations for the violations." *Id.* at 19. Additionally, Bellamy noted that "the current use [was] inconsistent with the light industrial recommendation of the Comprehensive Plan." Further, the Staff Report from the Department of Metropolitan Development noted that "[c]ontinued use of the site for commercial parking could negatively impact the long-term industrial viability of this industrial park, particularly since the site sits at the primary entrance of Park Fletcher." Appellee's Appendix at 2. Consequently, the staff recommended that the petition be denied.

A representative of S & S stated that S & S had brought legal action against its tenant to adhere to the lease agreement and proposed that "property maintenance duties would be taken out of the tenant's hands by having a long-term contract to maintain the property...." Appellant's Appendix at 19. S & S also stated that it would not make further requests for surface parking on the property.

The BZA found that:

1. The grant of the modification of conditions of 89–SE1–12 to permit the continuation of the current use as a long-term parking lot until February 1, 2005 will be injurious to the public health, safety, convenience, or general welfare of the community because the petitioner failed to adequately address remonstrator concerns regarding possible negative effects on adjacent industrial property; specifically long-term maintenance, right-of-way improvements, and permanent employee facilities.

2. The grant of the modification of conditions of 89–SE1–12 to permit the continuation of the current use as a long-term surface parking lot until February 1, 2005 will injure or adversely affect the adjacent area or property values therein because the petitioner failed to address remonstrator and staff concerns regarding the negative impacts of establishing a non-compatible use at this site which has been operated in violation of the conditions of the temporary special exception 89–SE1–12. Continued use of this site as a commercial parking lot could effect the future development of the subject site for an appropriate use, or the long-term viability of the adjacent industrial park, given the location of the subject site at the entrance of the industrial park.

3. The grant of the modification of conditions of 89–SE1–12 to permit the continuation of the current use as a long-term surface parking lot until February 1, 2005, will not be in harmony with the character of the district and land use authorized therein because the property is recommended for light industrial development by the Comprehensive Plan, the property is zoned industrially, and it is located within a large industrial park.

It is therefore the decision of this body that this variance petition is denied. *Id.* at 17.

S & S filed a Petition for Writ of Certiorari and Stay of Enforcement Proceedings with the trial court. S & S alleged that the BZA's denial of its petition for an extension of the special exception was arbitrary, capricious, and an abuse of discretion because: (1) the decision was "unsupported by substantial probative and relative evidence upon the record"; (2) the use was established, the improvements exist, and "S & S provided a mechanism to address the land maintenance issues of remonstrators"; and (3) the use for which S & S sought "to continue on the property is a use established and operating in the immediate vicinity of the real estate." *Id.* at 11. On June 28, 2002, the trial court denied the petition.

■ The issue is whether the trial court erred by failing to reverse the BZA's denial of the petition for an extension of a special exception filed by S & S. When reviewing a decision of a zoning board, we are bound by the same standard of review as the certiorari court.[1] *Crooked Creek*

---

1. Ind.Code § 36–7–4–1003(a) (1998) provides, in part, that:

 Each decision of the legislative body under section 918.6 of this chapter or the board of zoning appeals is subject to review by certiorari. Each person aggrieved by a decision of the board of zoning appeals or the legislative body may present, to the circuit or superior court of the county in which the premises affected are located, a verified petition setting forth that the decision is illegal in whole or in part and specifying the grounds of the illegality.

 Further, Ind.Code § 36–7–4–1009 (1998) provides that:

 The court may determine the sufficiency of the statements of illegality contained in the petition, without further pleadings, and may make its determination and render its judgment with reference to the legality of the decision of the board of zoning appeals, on the facts set out in the return to the writ of certiorari. If the court determines that testimony is necessary for the proper disposition of the matter, it may take evidence to supplement the evidence and facts disclosed by the return to the writ of certiorari, but the review may not be by trial de novo. In passing on the legality of the decision of the board, the court may reverse, affirm, or modify the decision of the board brought up for review.

*Conservation & Gun Club, Inc. v. Hamilton County N. Bd. of Zoning Appeals,* 677 N.E.2d 544, 547 (Ind.Ct.App.1997), *reh'g denied, trans. denied.* Ind.Code § 4–21.5–5–14 (1998) establishes the scope of a court's review of an administrative decision. *Equicor Dev., Inc. v. Westfield–Washington Township Plan Comm'n,* 758 N.E.2d 34, 36 (Ind.2001). Ind.Code § 4–21.5–5–14(d) provides that a court may provide relief only if the agency action is: (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (4) without observance of procedure required by law; or (5) unsupported by substantial evidence. Ind.Code § 4–21.5–5–14(a) further provides that "[t]he burden of demonstrating the invalidity of the agency action is on the party ... asserting invalidity."

■■■ In reviewing an administrative decision, a trial court is not to try the facts de novo or substitute its own judgment for that of the agency. *Equicor,* 758 N.E.2d at 37. Neither the trial court nor the appellate court may reweigh the evidence or reassess the credibility of witnesses. *Crooked Creek,* 677 N.E.2d at 547. Rather, reviewing courts must accept the facts as found by the zoning board. *Id.*

S & S argues that it "offered credible evidence" in support of its request for an extension of the special exception establishing each element of Section 2.12 of the ordinance. Appellant's Brief at 4. Further, S & S argues that the BZA relied upon "evidence lacking in probative value as presented by [Duke–Weeks] and others in opposition to the petition." *Id.* Consequently, S & S contends that the BZA's findings are "not grounded upon a reasonable evidentiary basis" and are arbitrary,

capricious, unreasonable, and an abuse of discretion. *Id.*

■■■ "[A] special exception is a use permitted under the zoning ordinance upon the showing of certain statutory criteria," while "a variance is a deviation from the legislated zoning classification applicable to a given parcel of land." *Town of Merrillville Bd. of Zoning Appeals v. Pub. Storage, Inc.,* 568 N.E.2d 1092, 1094 (Ind. Ct.App.1991). *trans. denied.* In general, the granting of a granting of "a special exception is mandatory once the petitioner shows compliance with the relevant statutory criteria" whereas the granting of a "variance is a matter committed to the discretion of boards of zoning appeal." *Id.* However, in *Crooked Creek,* we also observed that:

> while some special exception ordinances are regulatory in nature and require an applicant to show compliance with certain regulatory requirements (e.g. structural specifications), providing the zoning board with no discretion, some special exception ordinances provide a zoning board with a discernable amount of discretion (e.g. those which require an applicant to show that its proposed use will not injure the public health, welfare, or morals). Crooked Creek's position that a board of zoning appeals must grant a special exception upon the applicant's submission of substantial evidence of compliance with the relevant criteria is true only as to ordinances falling within the former category. In other words, when the zoning ordinance provides the board of zoning appeals with a discernable amount of discretion, the board is entitled, and may even be required by the ordinance, to exercise its discretion. When this is the case, the board is entitled to determine whether an applicant has demonstrated

that its proposed use will comply with the relevant statutory requirements.

*Id.* at 547–548 (internal citation omitted).

In *Crooked Creek*, the ordinance was similar to the ordinance at issue here. There, to grant a special exception, the board was required to find that the use would "not be injurious to the public health, safety, morals, or general welfare of the community" and that the use would "not affect the use and value of other property in the immediate area in a substantially adverse manner." *Id.* at 548. We held that these criteria, "having no absolute objective standards against which they can be measured, involve discretionary decision making on the part of the board." *Id.*

■ Similar language is used in the ordinance at issue here. The three elements of the Section 2.12 of the Ordinance have "no absolute objective standards against which they can be measured" and, thus, involve discretionary decision making on the BZA's part. Thus, as in *Crooked Creek*, the BZA was entitled to determine whether S & S satisfied the requirements for the grant of a special exception. *Id.* We must determine whether the BZA's decision "is supported by substantial evidence" and has "a reasonably sound evidentiary basis." *Id.* Evidence will be considered substantial if it is more than a scintilla and less than a preponderance. *Id.* at 549. In other words, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.*

■ Before addressing each of the BZA's findings on the individual elements of the special exception ordinance, we note that "the burden of demonstrating satisfaction of the relevant statutory criteria rests with the applicant for a special exception." *Id.* at 548. Consequently, S & S had the burden to show that an extension of the special exception would meet the criteria listed in Section 2.12 of the Ordinance. The remonstrators were not required to affirmatively disprove S & S's case. *See id.*

### A.

■ S & S first argues that the BZA's finding that the grant of the extension would be "injurious to the public health, safety, convenience, or general welfare of the community" is not supported by "any evidence, much less any evidence of significant probative value." Appellant's Brief at 10. The BZA found that:

> The grant of the modification of conditions of 89–SE1–12 to permit the continuation of the current use as a long-term parking lot until February 1, 2005 will be injurious to the public health, safety, convenience, or general welfare of the community because the petitioner failed to adequately address remonstrator concerns regarding possible negative effects on adjacent industrial property; specifically long-term maintenance, right-of-way improvements, and permanent employee facilities.

Appellant's Appendix at 17.

S & S argues that the BZA's conclusion that it failed to address remonstrator concerns is unfounded. S & S contends that it addressed the concerns expressed by Duke–Weeks by proposing the commitment and escrow agreement. Further, S & S argues that Duke–Weeks's concerns "have little or nothing to do with the public health, safety, convenience or general welfare." Appellant's Brief at 10. Accordingly, S & S argues that the remonstrators did not provide any evidence that the extension would be injurious to public health or safety. The BZA argues that the evidence demonstrated that S & S displayed signs in violation of the sign ordinance,

failed to adequately maintain the property, failed to remove graffiti, and failed to construct permanent restroom facilities for the employees. Further, the BZA points out that it took a lawsuit to correct the sign ordinance violations.

We emphasize again that S & S had the burden of proving that its use would not be injurious to the public health, safety, convenience, or general welfare of the community. According to the BZA's finding, S & S failed to meet this burden. S & S does not dispute that there had been concerns regarding its ordinance violations, property maintenance, removal of graffiti, and failure to provide permanent restroom facilities for its employees. Although S & S proposed using the commitment and escrow account to address Duke–Weeks's concerns, Duke–Weeks rejected the proposal due to S & S's failure to follow through with promises in the past. Examples of S & S's failures were presented to the BZA. We noted in *Crooked Creek* that "when both the applicant and remonstrators present substantial evidence in support of their respective positions, it is the function of the board of zoning appeals, with its expertise in zoning questions, to determine which side shall prevail. Since the board determination in either case would be supported by substantial evidence, it should not be disturbed upon appeal." *Crooked Creek* at 549–550. Here, although S & S presented evidence regarding its attempts to address Duke–Weeks's concerns, the BZA also presented evidence to support its position that S & S had failed to address the concerns in the past. Thus, the board's determination would be supported by substantial evidence in either case, and we cannot disturb its decision on this basis.

▮▮▮ Further, we agree that there must be a "rational relationship between the facts found and the conclusion reached" by the BZA. *Pub. Storage, Inc.*, 568 N.E.2d at 1097. Thus, a rational relationship must exist between the facts found by the BZA and its conclusion that the extension would be "injurious to the public health, safety, convenience, or general welfare of the community." The BZA found that S & S had failed to address concerns related to maintenance of the property, right-of-way improvements, and permanent employee facilities. We assume that the BZA was referring to the failure to maintain the landscaping and remove graffiti, the sign ordinance violations, and the use of "Porta–Potty" facilities rather than permanent restroom facilities. We cannot say that there is no rational relationship between S & S's violation of ordinances, failure to provide permanent sanitation, and failure to properly maintain its property and injury to the general welfare of the community. Consequently, the BZA's finding is supported by substantial evidence. *See, e.g., Scott v. Marshall Co. Bd. of Zoning Appeals*, 696 N.E.2d 884, 887 (Ind.Ct.App. 1998) (holding that the board had sufficient evidence to find that a proposed dog kennel could be "injurious to the use and enjoyment of others' property").

### B.

▮▮▮ S & S next argues that the BZA's finding that the grant of the petition would "injure or adversely affect the adjacent area or property values therein" was based solely upon "conjecture and speculation." Appellant's Brief at 12. The BZA found that:

The grant of the modification of conditions of 89–SE1–12 to permit the continuation of the current use as a long-term surface parking lot until February 1, 2005 will injure or adversely affect the adjacent area or property values therein because the petitioner failed to address remonstrator and staff concerns regard-

ing the negative impacts of establishing a non-compatible use at this site which has been operated in violation of the conditions of the temporary special exception 89–SE1–12. Continued use of this site as a commercial parking lot could effect the future development of the subject site for an appropriate use, or the long-term viability of the adjacent industrial park, given the location of the subject site at the entrance of the industrial park.

Appellant's Appendix at 17.

S & S argues that no evidence was presented that the extension would have an adverse effect on property values in the area. Rather, according to S & S, the concerns were "little more than conjecture and speculation" as to the effect on surrounding property values.[2] Appellant's Brief at 11. S & S's arguments essentially attempt to shift the burden to the remonstrators. However, S & S had the burden to demonstrate that the extension of its use would not "injure or adversely affect the adjacent area or property values therein." The BZA's finding recognizes that S & S failed to meet its burden. In *Pub. Storage*, we considered an ordinance that required that a special exception "not be injurious to the use and enjoyment of other property in the immediate vicinity for the purposes already permitted nor substantially diminish and impair property values within the neighborhood." 568 N.E.2d at 1095. There, the applicant presented evidence to the board that the "effect on neighboring property value would either be neutral or positive." *Id.* Al-

though remonstrators expressed concern that the use would hurt their property, they presented no evidence to show such an effect. *Id.* We held that if the applicant "had merely proffered testimony to the effect that it could not envision a decline in property values, it would have failed in its burden. Similarly, if the remonstrators had countered [the applicant's] expert testimony with contrary testimony of their own, the resolution of the question would have been a matter for the Board ... to resolve." *Id.*

Here, we find no evidence in the record that S & S presented any evidence on whether an extension of its special exception would "injure or adversely affect the adjacent area or property values therein." Likewise, the remonstrators presented opinions and concerns but no evidence that an extension of S & S's use would injure or adversely affect their property values. However, S & S had the burden to show that its proposed extension would not injure or adversely affect the adjacent area or property values and failed to meet its burden. Consequently, the BZA's finding is not arbitrary, capricious or an abuse of discretion. *See, e.g., id.* (holding that the board's finding was not supported by substantial evidence where the applicant presented evidence that the effect on neighboring properties would be neutral or positive and remonstrators only expressed concern that property values would be affected).

## C.

 Finally, S & S argues that the BZA's finding that the grant of the peti-

---

2. S & S also argues that the BZA failed to consider that another commercial surface parking lot is located three blocks east of S & S's property. However, this evidence does not appear in the record presented to us on appeal. S & S further argues that the zoning violations, which had been abated, should not have been a basis for the BZA's decision.

Although the BZA apparently considered the zoning violations, the prior zoning violations were not the sole basis for its present findings. Rather, the prior zoning violations were simply another example of S & S's failure to timely remedy concerns regarding the property.

tion would not be "in harmony with the character of the district and land uses authorized therein" is erroneous. The BZA found that:

> The grant of the modification of conditions of 89–SE1–12 to permit the continuation of the current use as a long-term surface parking lot until February 1, 2005, will not be in harmony with the character of the district and land use authorized therein because the property is recommended for light industrial development by the Comprehensive Plan, the property is zoned industrially, and it is located within a large industrial park.

Appellant's Appendix at 17.

S & S argues that the BZA found in 1989 that the use was harmonious with the character of the district and land uses authorized therein. Further, S & S argues that, for many years, the property was the site of the Ramada Hotel that operated with an adjacent surface parking lot similar to the current use. The BZA argues that the 1989 temporary special exception was granted because of the plane crash that occurred on the site and the resulting need for a "temporary use of the property until an appropriate use was selected." Appellee's Brief at 8. Further, the BZA argues that, as the Staff Report indicates, the extensive sign ordinance enforcement history is "an indication that this site may not be an appropriate place for a commercial parking lot, since an appropriate location would not necessarily require excessive sign displays to encourage business, nor would a typical light industrial use require excessive signage." *Id.*

Our supreme court recently held that "[i]f the basis for denial is a failure to meet a requirement of the governing ordinance, albeit one previously enforced laxly or not at all, the inquiry is not whether there are prior inconsistent decisions, but rather whether there is substantial evidence supporting the agency's decision." *Equicor*, 758 N.E.2d at 38–39. Thus, "past weak enforcement does not invalidate an otherwise valid requirement." *Id.* at 39. Consequently, even though the BZA previously granted the special exception to S & S, an extension of the special exception is not mandated. Rather, we must determine whether substantial evidence supports the BZA's decision.

The 1989 special exception was specifically designated as temporary. As the Staff Report indicates, the special exception was granted as a result of a tragic accident that occurred on the site. As a result of the accident, the Ramada Hotel was demolished and the temporary special exception was granted to allow S & S time to find an appropriate use for the property. Simply because the BZA granted a temporary special exception ten years ago does not require that the BZA do so again. Moreover, as the Staff Report pointed out with respect to the signage difficulties, circumstances during the past ten years have demonstrated that the site may not be appropriate for a commercial parking lot. Additionally, the site is located at the entrance to a large industrial park and commercial parking is not a permitted use for zoning classification I–3–S.[3] Consequently, the BZA's finding that the use is not in harmony with the character of the district

---

**3.** A permitted use of zoning classification I–3–S is "vehicle storage (new or operable)." Appellant's Appendix at 45. S & S argues "[i]f vehicle storage is a permitted use under this zoning classification, then why would vehicle parking be inconsistent with the character of

the zoning district?" Appellant's Brief at 13. However, a commercial parking lot with substantial traffic flow of customers is not necessarily consistent with a vehicle storage facility.

and land uses authorized therein is supported by substantial evidence.

S & S failed to meet its burden to prove the three criteria to obtain a special exception pursuant to Section 2.12 of the Ordinance. The BZA's findings are not arbitrary, capricious, or an abuse of discretion, and are supported by substantial evidence. Consequently, the trial court did not err by denying S & S's request to reverse the BZA's decision. *See, e.g., Crooked Creek,* 677 N.E.2d at 551 (holding that the trial court did not err by affirming the BZA's denial of a request for a special exception).

For the foregoing reasons, we affirm the trial court's judgment in favor of the BZA.

Affirmed.

SULLIVAN and KIRSCH, JJ. concur.