CROOKED CREEK CONSERVATION and GUN CLUB, INC., Appellant,

v.

HAMILTON COUNTY NORTH BOARD OF ZONING APPEALS, Samuel R. Heiser, M.D., Appellees,

No. 29A02–9507–CV–407.

Court of Appeals of Indiana.

Feb. 28, 1997.

Rehearing Denied April 15, 1997.

---

Karen Orr Mcclure, Covington, Douglas B. Floyd, Noblesville, for Appellant.

Randolph A. Leerkamp, Indianapolis, Douglas D. Church, Bruce M. Bittner, Church, Church, Hittle & Antrim, Noblesville, for Appellees.

## OPINION

SULLIVAN, Judge.

Appellant Crooked Creek Conservation & Gun Club, Inc. (Crooked Creek) sought a special exception from appellee Hamilton County North Board of Zoning Appeals (BZA) in order to build a trap and skeet shooting range in Hamilton County. Following a public hearing during which remonstrators opposed Crooked Creek's plans, the BZA refused to grant the special exception. Crooked Creek petitioned the trial court for a writ of certiorari and the trial court affirmed the BZA's decision.

Crooked Creek now appeals, presenting the following restated issues for our review:

(1) Did the trial court err in affirming the BZA's refusal to grant the special exception?

(2) Did the trial court erroneously make findings of fact in addition to those made by the BZA?

(3) Did the trial court err in affirming the BZA's denial of Crooked Creek's motion to submit evidence made subsequent to the BZA's first meeting on the matter?

Crooked Creek has operated a trap and skeet shooting club in Marion County for over 45 years. Concerned with the increased urbanization of the area in which its present facilities are located, Crooked Creek found what it believed to be a more suitable parcel of land upon which to conduct its activities in rural Hamilton County. The property is zoned "A–2", a designation which contemplates agricultural, large-lot residential, and flood plain uses. The Hamilton County Zoning Ordinance (HCZO) provides that gun clubs may be permitted in A–2 districts as special exceptions to the above-delineated uses. Hamilton Co. Zoning Ord. (hereinafter HCZO) Art. 15(B) § 1. A special exception is simply a use permitted under a zoning ordinance upon the showing of certain criteria set forth in the ordinance. The HCZO provides that the BZA must determine that the specially excepted use will fulfill three separate requirements before the BZA may grant the exception. As HCZO Art. 15(A) § 2 states:

> Upon hearing, in order for a special exception to be granted, the board must find, in writing, that:
>
> a. The establishment, maintenance, or operation of the special exception will not be injurious to the public health, safety, morals, or general welfare of the community;
>
> b. The special exception will not affect the use and value of other property in the immediate area in a substantially adverse manner;
>
> c. The establishment of the special exception will be consistent with the character of the district (particularly that area immediately adjacent to the special exception) and the land use permitted therein.

In March, 1994, Crooked Creek applied to the Hamilton County North Board of Zoning Appeals for a special exception for its trap and skeet shooting operation. On April 26, 1994, the Hamilton County North Board of Zoning Appeals convened to review and take

public comments upon Crooked Creek's application. Crooked Creek presented testimonial evidence and submitted a comprehensive package of documentary evidence in support of its application. Crooked Creek's evidence generally supported its assertion that its shooting operation would satisfy the three above-mentioned requirements for the granting of a special exception. The remonstrators, however, presented evidence, both documentary and testimonial, which suggested, among other things, that Crooked Creek's trap and skeet shooting activities would be detrimental to public health and would decrease property values in the area. After both sides completed their presentations, the BZA tabled the matter so that the board members could consider the documentary evidence supporting and opposing Crooked Creek's application. The BZA indicated that it would come to a conclusion at the following meeting to be held May 24, 1994.

When the BZA reconvened on May 24, Crooked Creek asked the BZA to consider additional documentary evidence compiled by Crooked Creek assertedly rebutting the evidence presented by the remonstrators at the April 26 meeting. The BZA refused to consider this additional evidence, indicating that the time for submission of evidence ended upon the adjournment of the April 26 meeting, and then voted three to one to deny Crooked Creek's application. The BZA members voting against the application found, generally, that the lead shot used in trap and skeet shooting presented potential public health hazards, and that gun noise could adversely impact property values in the otherwise bucolic surroundings.

■ When reviewing a decision of a zoning board, an appellate court is bound by the same standard of review as the certiorari court. *Ripley Co. Bd. of Zoning v. Rumpke of Indiana, Inc.* (1996) Ind.App., 663 N.E.2d 198, *trans. denied.* Under this standard, a reviewing court, whether at the trial or appellate level, is limited to determining whether the zoning board's decision was based upon substantial evidence. *Id.* The proceeding before the certiorari court is not intended to be a trial de novo, and neither

that court nor the appellate court may reweigh the evidence or reassess the credibility of witnesses; rather, reviewing courts must accept the facts as found by the zoning board. *Id.*

## I.

Crooked Creek argues that the trial court erred in failing to reverse the BZA's decision to deny Crooked Creek's application. Crooked Creek first contends that since it presented substantial evidence to show that it would comply with the three criteria for special exceptions, the BZA was required to grant the exception. Crooked Creek also argues that the remonstrators presented insufficient evidence to support the BZA's conclusion that the trap and skeet shooting operations would not meet the special exception criteria.

■ Crooked Creek claims that the award of a special exception is mandatory upon the applicant's presentation of evidence that its proposed use satisfies the statutory prerequisites set forth in the zoning ordinance. It is often true, as Crooked Creek notes, that if a petitioner for a special exception presents sufficient evidence of compliance with relevant statutory requirements, the exception must be granted. *Town of Merrillville Bd. of Zoning Appeals v. Public Storage, Inc.* (1991) Ind.App., 568 N.E.2d 1092, 1095, *trans. denied.* However, the *Town of Merrillville* case was careful to note that while some special exception ordinances are regulatory in nature and require an applicant to show compliance with certain regulatory requirements (e.g. structural specifications), providing the zoning board with no discretion, some special exception ordinances provide a zoning board with a discernable amount of discretion (e.g. those which require an applicant to show that its proposed use will not injure the public health, welfare, or morals). *Id.* at n. 3. Crooked Creek's position that a board of zoning appeals must grant a special exception upon the applicant's submission of substantial evidence of compliance with the relevant criteria is true only as to ordinances falling within the former category. In other words, when the zoning ordinance provides the board of zoning appeals

with a discernable amount of discretion, the board is entitled, and may even be required by the ordinance, to exercise its discretion. When this is the case, the board is entitled to determine whether an applicant has demonstrated that its proposed use will comply with the relevant statutory requirements.

■ The ordinance implicated in the present case confers upon the Hamilton County North Board of Zoning Appeals a significant amount of discretion. The ordinance requires the board to find a variety of facts before issuing a special exception. For example, the board must find that the specially excepted use "will not be injurious to the public health, safety, morals, or general welfare of the community" and that the use "will not affect the use and value of other property in the immediate area in a substantially adverse manner; . . ." HCZO Art. 15(A) § 2. It is clear that these criteria, having no absolute objective standards against which they can be measured, involve discretionary decision making on the part of the board. Thus, the BZA was entitled to determine whether Crooked Creek satisfied the requirements for the grant of a special exception.

■ Crooked Creek nevertheless maintains that the evidence presented by the remonstrators was not sufficiently substantial to support the BZA's determination. We must note here that the burden of demonstrating satisfaction of the relevant statutory criteria rests with the applicant for a special exception. This court has accordingly been cautious to avoid the imposition upon remonstrators of an obligation to come forward with evidence contradicting that submitted by an applicant. *See, e.g., Ripley Co., supra,* 663 N.E.2d at 207; *Town of Merrillville, supra,* 568 N.E.2d at 1095, n. 4. Crooked Creek bore the burden to show that its trap and skeet shooting operation would comply with the three above mentioned criteria. Neither those opposed to Crooked Creek's application, nor the BZA, were required to negate Crooked Creek's case.

■ Since remonstrators need not affirmatively disprove an applicant's case, a board of zoning appeals may deny an application for a special exception on the grounds that an applicant has failed to carry its burden of proving compliance with the relevant statutory criteria regardless of whether remonstrators present evidence to negate the existence of the enumerated factors.[1] *See Ripley Co., supra,* 663 N.E.2d at 207. However, since the BZA determined that Crooked Creek was not entitled to a special exception, and based its determination upon evidence presented by the remonstrators, we will determine whether the BZA's decision was based upon substantial evidence by examining the sufficiency of the evidence presented by the remonstrators.

■ When determining whether an administrative decision is supported by substantial evidence, the reviewing court must determine from the entire record whether the agency's decision lacks a reasonably sound evidentiary basis. *Alcoholic Beverage Comm'n v. River Road Lounge* (1992) Ind.

---

1. This court previously noted the apparent dilemma thus presented for boards of zoning appeals. A zoning board may in its discretion determine that an applicant has not presented substantial evidence to demonstrate that its proposed use will comply with statutory requirements even in the absence of contrary evidence submitted by remonstrators. The difficulty arises when the zoning board attempts to support its determination. This court has indicated that it would be inappropriate to require the board to provide a detailed explanation as to why the criteria have not been met, for to do so would either force those who object to the exception to come forward with specific evidence in opposition, or would compel the board to explain how the criteria should or could have been met. Both options, we have noted, improperly remove the burden from the applicant to affirmatively prove compliance with the criteria. *Ripley Co. Bd. of Zoning Appeals v. Rumpke of Indiana, Inc.* (1996) Ind.App., 663 N.E.2d 198, 207, *trans. denied.* This dilemma is not squarely before us because the remonstrators presented evidence that Crooked Creek's proposed use would not meet the criteria set forth in the zoning ordinance, and because the BZA expressly rested its conclusion on this evidence. However, in the event that boards of zoning appeals deny applications for special exceptions upon grounds that the applicant has failed to carry its burden to show compliance with relevant statutory criteria, boards would be well advised to at least state as much in their findings and to point out what they see as any deficiency in the applicant's evidence. Boards should be able to perform this task without improperly assuming the burden of negating the applicant's case.

App., 590 N.E.2d 656, *trans. denied.* Thus, we have noted that evidence will be considered substantial if it is more than a scintilla and less than a preponderance. *Id.* at 659. In other words, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* We think that the certiorari court's conclusion that the BZA's determination was supported by substantial evidence was not error.

■ The remonstrators presented substantial evidence that the lead shot used in trap and skeet shooting presents a public health hazard, and that noise from gunfire could impair local property values. The remonstrators submitted a letter signed by Thomas F. Long, described in the letter and by the letterhead as a Senior Toxicologist with the Environmental Toxicology Section of the Illinois Department of Public Health, explaining the effects of lead shot used in target shooting upon human health. The letter stated that when lead shot is discharged from a shotgun into a target, "it tends to be pulverized into a fine dust." Record at 386. This dust, according to the letter, "tends to be mobile and moves easily in the environment on wind or in water." *Id.* Finally, the letter concluded that

> [l]ead is a very dangerous, although often subtle, poison absorbed by the gut and lung. In humans, lead primarily attacks the nervous system with children being at highest risk. Children exposed to excessive levels of lead can suffer damage as subtle as a loss of IQ and developmental delays or as serious as mental retardation and death. Adults may also experience nervous system damage as a result of lead exposure although it is generally not as devastating as is seen in children. Additionally, lead will attack the digestive system, the blood, the kidneys, and the reproductive system. Since lead can damage both male and female reproduction and will cross the placenta, miscarriage and birth defects can result.

*Id.* The opinion of Mr. Long constitutes sufficient evidence to justify the Board's conclusion in this regard.

The remonstrators also presented testimony from a qualified and experienced real estate appraiser who gave his opinion that the location of a gun club in the community would reduce demand for the property, thereby decreasing its value. Another remonstrator, a builder and developer of a local subdivision, testified that one individual made an offer to purchase one of the builder's properties upon the condition that Crooked Creek's plans were denied. The builder also stated his belief that the presence of a gun club would negatively impact property values in the area. Moreover, many of the remonstrators who testified at the April 24 meeting expressed their concern with respect to the noise level of Crooked Creek's activities, expressing the fear that the noise of gunfire would take away from the quiet, rural character which attracted them to the area. Crooked Creek's own real estate appraisal expert testified that the value of property is driven by the demand for that property. Substantial evidence was adduced at the April 26 meeting to support the BZA's conclusion that a gun club could reduce the value of land in the area by taking away its only apparent attraction, the peace and quiet of the rural neighborhood.

■ Crooked Creek disputes these contentions and submitted evidence to the effect that the lead involved in trap and skeet shooting poses no threat to human health in its normal usage, and that the presence of the gun club would not tend to reduce property values in the area. However, the zoning board was under no obligation to give the evidence presented by Crooked Creek more weight than that of the remonstrators. *Town of Merrillville, supra,* 568 N.E.2d 1092 at n. 4. As we have noted, a board of zoning appeals has the discretion to deny a special exception if the board determines that the applicant has not met the relevant criteria. *Ripley Co., supra,* 663 N.E.2d at 207. Moreover, when both the applicant and remonstrators present substantial evidence in support of their respective positions, it is the function of the board of zoning appeals, with its expertise in zoning questions, to determine which side shall prevail. *Town of Merrillville, supra,* at 1095. Since the board's determination in either case would be sup-

ported by substantial evidence, it should not be disturbed upon appeal. *Id.*

The remonstrators presented evidence to support the BZA's conclusion that the lead discharged during trap and skeet shooting posed a public health hazard, and that the gun club would negatively impact local property values. The BZA, as it was entitled to do, credited that evidence and determined that Crooked Creek was not entitled to a special exception because it found that the lead shot used in target shooting could be hazardous to human health and that property values could be negatively impacted by the existence of a gun club in the area.

## II.

■ Crooked Creek next argues that the Hamilton Superior Court impermissibly found facts in addition to those found by the BZA. The findings of the BZA, as we have noted, were limited to the health consequences of lead shot and the impact upon health and property values from the noise of gunfire. Crooked Creek directs our attention to the certiorari court's Finding of Fact # 5 which listed some of the evidence presented at the April 26 hearing. The finding refers to evidence of the health dangers of the petroleum pitch contained in clay pigeons and to a National Rifle Association (NRA) manual regarding shooting range site selection and safety issues. Crooked Creek complains that since the BZA made no findings regarding petroleum pitch or the NRA manual, the trial court's identification of this evidence in its findings of fact violates the rule that reviewing courts may only review the findings of a zoning board and may not make findings for the agency by inference based upon evidence in the record. *Boffo v. Boone Co. Bd. of Zoning Appeals* (1981) Ind. App., 421 N.E.2d 1119. The trial court was charged with determining whether the BZA's determination was supported by substantial evidence. To this end, it merely listed some of the evidence presented at the hearing. The trial court did not find as fact that petroleum pitch was hazardous to human health, nor that Crooked Creek had in some way violated the NRA guidelines. Neither did the trial court's conclusion that the BZA's

determination was supported by substantial evidence refer to this evidence. We cannot say the trial court erred in referring to evidence which was presented at the hearing when that evidence apparently had no bearing upon the court's decision.

## III.

■ Crooked Creek finally argues that the trial court erred in affirming the BZA's refusal to grant Crooked Creek's request to submit additional evidence at the May 24 hearing. At the close of the April 26 meeting, the matter of Crooked Creek's application was tabled so that the BZA could consider the significant amount of documentary evidence submitted by both sides. At some point between the April 26 meeting and the BZA's reconvention on May 24, Crooked Creek apparently determined to submit evidence to rebut the case made by the remonstrators. It therefore submitted a formal Motion to Consider Evidence to the BZA. The BZA determined that both sides had ample opportunity to present evidence at the April 26 hearing and denied Crooked Creek's motion.

There is simply no suggestion in the record that anyone participating at the April 26 meeting—the BZA, Crooked Creek, or the remonstrators—contemplated that any additional evidence would be considered following the adjournment of the April 26 meeting. Rather, as one of the BZA members stated at the conclusion of the April 26 meeting in response to an audience member who asked if it would be appropriate to file a written rebuttal to statements made at the hearing, "I think that the rebuttals are over with." Record at 665. Perhaps if Crooked Creek had moved to submit additional evidence at some point prior to the adjournment of the April 26 meeting, this court would be more receptive to its argument that it was error to refuse its request. However, Crooked Creek made no objection to the closing of the April 26 meeting without an indication that additional opportunities for the submission of evidence were contemplated.

Neither are we persuaded by Crooked Creek's argument that it was unfairly whipsawed by the deluge of data contained in the

materials submitted by the remonstrators. Crooked Creek submitted its application for a special exception to the BZA at the April 26 hearing. This document was an impressive package of evidence in support of its position, challenging virtually every claim made by the remonstrators. However, as we have noted, the BZA was entitled to weigh this conflicting evidence, and concluded that the evidence presented by the remonstrators was more persuasive. The trial court did not err in affirming the BZA's denial of Crooked Creek's motion to submit additional evidence.

The decision of the trial court affirming the BZA is affirmed.

KIRSCH and NAJAM, JJ., concur.