Steven **GRONCESKI** and Jennifer Gronceski, Appellants–Petitioners,

v.

The **TOWN OF LONG BEACH BOARD OF ZONING APPEALS,** Appellee–Respondent.

No. 46A03–9810–CV–422.

Court of Appeals of Indiana.

Dec. 30, 1999.

William F. Herrbach, Thomas F. Wagner, Michigan City, Indiana, Attorneys for Appellant.

Steven W. Handlon, Handlon & Handlon, Portage, Indiana, Attorney for Appellee.

## OPINION

SULLIVAN, Judge

Appellants, Steven and Jennifer Gronceski (Gronceskis), appeal the review court's order upholding the ruling of the Long Beach Board of Zoning Appeals (BZA) ordering the Gronceskis' fence removed because it is an accessory structure or use prohibited by the Long Beach Zoning Code (Zoning Code).

We reverse.

Appellants present four issues for review which we consolidate and restate as follows:

(1) Whether the review court applied the proper standard of review to the Gronceskis' appeal of the BZA's decision;

(2) Whether the review court erred in affirming the BZA's interpretation of the Zoning Code; and

(3) Whether the review court erred by failing to find that the BZA interpreted the Zoning Code in such a manner as to violate I.C. 36–7–4–1108 (Burns Code Ed. Repl.1995).

The Gronceskis reside at 2309 Foxdale Trail in Long Beach, Indiana. Their property is located in a residential district. Mrs. Gronceski operates a child care home at the residence in which she provides care for ten (10) children on a daily basis. After receiving a building permit from the Building Commissioner, Steve Jacox, the Gronceskis erected 117 feet of four foot tall fence in the front and side yard of their property. The fence encloses a play area for the child care home. It is a complete 360° enclosure which is not attached to the house.

A petition was circulated among the Gronceskis' neighbors objecting to "the zoning violation by the owner(s) of the day care business and property located at 2309 Foxdale Trail" and it requested that the Town Council "issue a 'cease and desist' order to said violator(s)." Record at 45–48. On September 5, 1997, Richard Svetanoff, a neighbor of the Gronceskis who is also an attorney, drafted a letter to the Long Beach Building Commission as a petition and formal complaint seeking an investigation and action regarding allegations that the fenced-in area at 2309 Foxdale Trail constitutes a Zoning Code violation.

Ultimately,[1] this matter was set for a public hearing before the BZA on November 24, 1997. The BZA determined that the Gronceskis' fence was not in compliance with the Zoning Code and ordered the fence and playground equipment removed. The Gronceskis filed a Verified Petition for Writ of Certiorari with the review court on December 9, 1997. The review court granted a motion for Richard Svetanoff, an adjoining landowner, to intervene, but also remanded the issue to the BZA for a full hearing on the record, testimony under oath, and issuance of written findings.[2] The matter was then to be resubmitted to the review court. The BZA held a second hearing on April 21, 1998, which was fully transcribed with testimony under oath. After this hearing, the BZA issued findings of fact and a ruling that the Gronceskis' fence is an accessory structure or use prohibited by the Zoning Code and ordered the structure removed. The matter was resubmitted to the review court. Once again, the review court remanded the matter to the BZA for a hearing with neutral and detached board members.[3] At this hearing, the BZA voted 3 to 2 that the Gronceskis' fence was an accessory structure or use prohibited by the Zoning Code and ordered the structure removed. The Gronceskis filed another Verified Petition for Writ of Certiorari with the review court. The review court affirmed the BZA's decision and the Gronceskis now appeal.

## I. Standard of Review

The Gronceskis contend that the review court applied an improper standard of re-

---

1. Allegations that the Gronceskis' fenced-in play area violated the Zoning Code had been presented to both the Long Beach Town Council and the Long Beach Building Commission. There was disagreement as to how this matter ultimately made its way to the BZA. Nevertheless, the review court ruled that the BZA had jurisdiction and appellants do not raise the issue of jurisdiction of the BZA in their appeal.

2. From the first BZA proceeding, there were no findings given by the BZA for the review court to consider. The only record of the

proceeding before the BZA on November 24, 1997, available to the review court were minutes of the clerk-treasurer.

3. Michael Tym, Chairman of the BZA, participated in the prior hearing, but did not vote. Mr. Tym and his wife live in the same neighborhood as the Gronceskis and had indicated that the Gronceskis' fenced-in play area affected property values, including their own. The review court held that Mr. Tym's involvement in the proceedings constituted a conflict of interest.

view by giving too much deference to the BZA in its interpretation of the Zoning Code.

In reviewing a decision of a zoning board, we are bound by the same standard of review as the review court. *Crooked Creek Conservation and Gun Club, Inc. v. Hamilton County N. Bd. of Zoning Appeals* (1997) Ind.App., 677 N.E.2d 544, 547, *trans. denied.* The proceeding before the review court is not intended to be a trial de novo, and neither that court nor the appellate court may reweigh the evidence or reassess the credibility of witnesses. *Id.* Reviewing courts must accept the facts as found by the zoning board. *Id.*

Even in adopting a standard of review requiring deference to the factual determinations of the BZA, we must reverse the review court's decision.

### II. Interpretation of Zoning Code

The Gronceskis contend that the review court erred by affirming the BZA's interpretation of the Zoning Code. The BZA ruled that the Gronceskis' fence is an accessory structure or use prohibited by the Zoning Code and ordered the structure removed. The review court stated that it is the BZA's responsibility to interpret the zoning ordinance and with the information contained in the transcripts and findings, the BZA had a sufficient basis to make its decision.

In its findings, the BZA noted that a fence not exceeding four feet in height is a permitted use in the front yard in a residential district under Zoning Code § 154.41(B)(4). The BZA further stated that the Gronceskis' fence was erected to enclose a play area to be used as an adjunct to the child care home operated from the Gronceskis' residence and that the intended use of the fenced-in area renders it an accessory structure or use. The BZA then determined that Zoning Code § 154.41(B)(4)(c) provides that accessory structures are not permitted in front yards, interior side yards, or side yards adjoining streets. The BZA then concluded that the fence was an "accessory structure of use" and ordered the "structure" removed.

The Gronceskis assert that the BZA's interpretation of the Zoning Code is incorrect because Zoning Code § 154.41(B)(4), dealing with accessory uses, provides that "[f]ences, lattice workscreens, hedges, or walls may be located in a required side or rear yard when they do not exceed seven feet in height and in a required front yard when they do not exceed four feet in height." The Gronceskis contend that a fair reading of this section, construing the entire section together, allows the fence as a specific permitted use.

We agree with the Gronceskis that the BZA incorrectly interpreted the Zoning Code. The Code defines "ACCESSORY BUILDING[4] AND USE"[5] as "[a] building, structure, or use subordinate to another structure or use located on the same lot and which does not change or alter the character of the premises and which is not used for human occupancy." Zoning Code § 154.04. In a cursory consideration one might classify the Gronceskis' fence as an accessory structure because it is subordinate to another use, (the play area) is located on the same lot, does not change or alter the character of the premises, and is not used for human occupancy. The play area might be classified as an accessory use because it is subordinate to the child care home operated in the Gronceskis' residence, is located on the same lot, does not change the character of the premises, and is not used for human occupancy. Notwithstanding the arguable rea-

---

**4.** "Building" includes the word "structure" and vice versa. Zoning Code § 154.04.

**5.** A "use" is defined as "[t]he employment or occupation of a building, structure, or land for a person's service, benefit or enjoyment." Record at 171 (quoting Zoning Code § 154.04).

sonableness of these classifications, the Gronceskis' fenced-in play area still does not violate the Zoning Code.

The BZA ruled that the Gronceskis' fence was an accessory structure or use prohibited by the Zoning Code. The BZA seeks to attack the presence of the play area by characterizing the Gronceskis' fence as an accessory structure and utilizing the prohibition against accessory structures in Zoning Code § 154.41(B)(4) to remove the Gronceskis' fence.

Zoning Code §.154.41(B)(4) provides that "[f]ences ... may. be located in a required side or rear yard when they do not exceed seven feet in height and in a required front yard when they do not exceed four feet in height." Zoning Code § 154.41(B)(4)(c) states that "[a] detached or attached accessory structure shall not be located in a front yard, interior side yard ... or side yard adjoining a street, except as otherwise regulated herein for a specific permitted use." If a fence falls within the definition of an "accessory structure,"[6] there is a tension between Zoning Code § 154.41(B)(4) which allows fences within certain specifications and Zoning Code § 154.41(B)(4)(c) which prohibits detached accessory structures.

The Gronceskis' fence is permissible under Zoning Code § 154.41(B)(4) because it does not exceed four feet in height as is required for fences located in a front yard. Further, the prohibition against "accessory structures" in front and side yards in Zoning Code § 154.41(B)(4)(c) may not be held to preclude a fence that falls within the specifications set out in Zoning Code § 154.41(B)(4) because such construction would render Zoning Code § 154.41(B)(4) meaningless. We hold that a fence is not within the contemplation of accessory structures prohibited under Zoning Code '§ 154.41(B)(4)(c)[7] because it is specifically permitted so long as it falls within the specifications of Zoning Code § 154.41(B)(4) which regulates accessory uses. In the instant case, the Gronceskis' fence in the front and side yard does not exceed four feet in height. Thus, the Gronceskis' fence falls within the specifications such that it is specifically permitted under Zoning Code § 154.41(B)(4).[8]

The BZA maintains that the Gronceskis' fenced-in enclosure is an "accessory use" and as an "accessory use" violates Zoning Code § 154.41(B)(4)(c) which provides that "[a] detached or attached accessory *structure* shall not be located in a front yard, interior side yard ... or side yard adjoining a street, except as otherwise regulated herein for a specific permitted use." (Emphasis supplied). However, the BZA incorrectly attempts to convert this Zoning Code section into an accessory use prohibition which would prohibit the play area. It is clear that Zoning Code § 154.41(B)(4)(c) only prohibits accessory *structures*.

Upon appeal, the BZA also contends that the accessory structure creates lot coverage in excess of the 35% restriction of Zoning Code § 154.23(E). Although this issue was before the BZA as another method to attack the Gronceskis' fence, it was not addressed in the Board's findings because the BZA based its decision upon a violation of Zoning Code § 154.41(B)(4)(c). Nevertheless, the BZA's argument must fail.

6. For purposes of this appeal, we assume that a fence is a structure within the contemplation of the Code.

7. It should be noted that Zoning Code § 154.41(B)(4)(c) uses the term structure, but does not specifically use the term "fence." If it had used the term fence, a different result might obtain.

8. If the Gronceskis' fence had been a 4½ foot tall fence located in the front yard, it would not meet the guidelines set out in Zoning Code § 154.41(4) and would not be a specific permitted use. In such a situation, where a fence does not fall within the specifications required in Zoning Code § 154.41(B)(4), it is possible that such a fence might fall under the prohibition against accessory structures in Zoning Code § 154.41(B)(4)(c).

Zoning Code § 154.23(E) provides that "[m]aximum lot coverage by *buildings and structures* shall not exceed 35% of the total lot area." (Emphasis supplied). Given the wording of this Zoning Code section, we conclude that the proper "structure" which should be measured is the fence itself, *not* including the play area encompassed by the fence. The play area is the yard, not a structure. The play area enclosed by the accessory structure or fence is not a structure and should not be included in the calculation of maximum lot coverage. If the Town of Long Beach wishes for the area inside an accessory structure such as the Gronceskis' fence to be included in calculating maximum lot coverage, such a change may be made through the local legislative process.

More importantly, except by inclusion of a survey map of the lot, the record does not contain direct evidence of the area of the lot itself. Although we know the perimeter of the fence is 117 feet, neither the BZA nor the intervenor [9] has informed us of the exact shape of the fence so that the area covered by the fence itself can be calculated.[10] Even had the Board or the intervenor done so, our rough calculations indicate the 35% maximum lot coverage provision would still not be violated.

Giving the BZA the benefit of including the entire play area encompassed by the fence in computing lot coverage, without a restriction on shape, we take judicial notice that the maximum area for a fixed perimeter of 117 feet would be that of a circle. The area of a circle with a perimeter of 117 feet is 1,090.[11] Thus, the maximum area of the fence and enclosed play area here involved is 1,090 square feet. Our rough calculations of the lot dimensions indicate a minimum lot size of 8,546 square feet.[12] The residential structure containing the day care center is indicated to be 1,364 square feet. Thus, the total area of buildings and structures (even including the play area) equals 2,454 square feet.[13] Thus, using the maximum area for the enclosed area and the mini-

---

9. As earlier noted, Mr. Svetanoff, who participated in the BZA proceedings, was an intervenor at the review court level. Upon his petition, he was granted *amicus* status before this court, but on November 2, 1999, filed a Notice declining to file an *Amicus Curiae* brief.

10. While we do know the Gronceskis have 117 feet of fence, without knowing the exact shape of the fence, it is mathematically impossible to calculate the area which the fence itself covers.

11. In order to calculate the area of a circle which has a perimeter or circumference of 117 feet, one must first calculate the diameter. The diameter is calculated by dividing the circumference (117) by pi (which is approximately 3.14) which reveals a diameter of 37.26 feet. Next, the radius is calculated by taking ½ of the diameter (37.26) which yields a radius of 18.63 feet. The area of a circle is calculated by taking the radius squared or 347.07 multiplied by pi. The area of the circle is, therefore, 1,090 square feet.

12. In order to estimate the area of the lot, we took the measurements of the east/southeast side of the triangular lot (while it is not an exact triangle, it is close) which are 88.76 feet and 53.74 feet and added them together. This measurement equals 142.5 feet. To minimize the area of the lot and give the BZA the benefit of the doubt, we subtracted ten feet from this measurement and used 132.5 feet as the measurement for the base of a triangle. The north side of the lot measures 157.4 feet and the southwest side of the lot measures 145 feet. In order to figure the area of a triangle, the formula is ½ (base × height). The measurement for height was unknown. We used the Pythagorean Theorem which is $a^2 + b^2 = c^2$ to find the unknown height measurement. We used a triangle that could be divided into two right triangles. We presumed a base measurement of 132.5 feet and 145 feet for each of the two other sides of the triangle. We divided the triangle in half so that there were two right triangles, each with a base of 66.25 (½ of 132.5) and a hypotenuse of 145. The unknown measurement of the right triangle would become our height. Thus, the formula became $(66.25)^2 + b^2 = 145^2$. We solved $b^2 = 145^2 - (66.25)^2$ by taking $b^2 = 16,636$. Thus, by taking the square root of 16,636, the height measurement becomes 129 feet. Finally, to calculate the lot area we used the computation: ½ (132.5 × 129) which equals 8,546 square feet.

13. 1,090 + 1,364 = 2,454.

mum area for the lot, the enclosed area together with the area of the day care center structure does not exceed 35% of total lot area.[14] The Gronceskis are not in violation of the maximum lot coverage provision of the Zoning Code.

For the foregoing reasons, we reverse the review court's order upholding the BZA's ruling ordering the Gronceskis' fence removed because it is an accessory structure or use prohibited by the Zoning Code.[15]

RILEY, J., and MATTINGLY, J., concur.

---

**14.** $2,454 \div 8,546 = 29\%$.

**15.** It is understandable that the Gronceskis' neighbors are not aesthetically pleased with the configuration and placement of the fence, as well as the "playground" appearance of the area encompassed by the fence. Nevertheless, the Zoning Code, as written, does not prohibit the Gronceskis' fence enclosing a play area.