PORTER COUNTY BOARD
OF ZONING APPEALS,
Appellant–Respondent,

v.

SBA TOWERS II, LLC, Appellee–
Petitioner.

No. 64A04–0910–CV–589.

Court of Appeals of Indiana.

May 19, 2010.

Scott R. McClure, Peter L. Boyles, Rhame & Elwood, Portage, IN, Attorneys for Appellant.

Terry K. Hiestand, Hiestand Law Office LLC, Chesterton, IN, Attorney for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Respondent, Porter County Board of Zoning Appeals (BZA or Board), appeals the trial court's grant of Appellee–Petitioner's, SBA Towers II, LLC (SBA), Verified Petition for a Writ of Certiorari requesting the trial court to award it a Special Exception for the construction of a wireless communications tower and accompanying equipment cabinets.

We affirm.

### ISSUE

The BZA raises one issue on appeal which we restate as: Whether the trial court erred in reversing the BZA's denial of SBA's request for a Special Exception.

### FACTS AND PROCEDURAL HISTORY

On May 18, 2008, SBA filed an Application with the BZA seeking a Special Exception under the Porter County Unified Development Ordinance to construct a 199–foot monopole wireless communications tower and accompanying equipment cabinets near the center of the property located at 674 Meridian Road, in Liberty Township, Porter County, Indiana. On or about June 11, 2008, the Porter County Plan Commission (Plan Commission) issued a favorable Inspection Committee Report (Report) on SBA's request for a Special Exception. This Report determined that the "proposed Special Exception would not adversely affect the Master Plan or the potential use of adjoining properties; the access roads could accommodate the traffic which could be generated; and, the proposal would not adversely affect the natural features of the area or the current trends of development." (Appellant's App. p. 8).

On July 16, 2008, the BZA conducted a public hearing on SBA's application. At the hearing, the SBA submitted a booklet explaining the entirety of the proposed project. Several members of the public were heard at the public hearing and they spoke both for and against the granting of the Special Exception. At the close of the hearing, the BZA voted to deny the Special Exception and it was stated that this vote incorporated "the findings of fact as prepared by the [BZA's] counsel" although no written findings of fact were in existence at the time of the vote. (Appellant's App. p. 228). On July 28, 2008, the BZA sent SBA a letter notifying it of the Board's denial of the Application for a Special Exception. The letter also indicated that the BZA's findings of fact were in the BZA's file. However, the findings of fact were blank. In fact, the findings of fact were not approved by the BZA until its September 17, 2008 meeting and not signed until its October 7, 2008 meeting.

The BZA's findings of fact state, in pertinent part:

> The [BZA] found and made the following findings of fact, pursuant to § 10.22(I)(8) of the Porter County Unified Development Ordinance:
>
> 1) The proposed Special Exception is to be located in a zoning district that wherein such use may be permitted, namely a P2 zone;
>
> 2) The requirements set forth in Chapter 5, Special Exception Standards for such Special Exception were met;
>
> 3) The Special Exception is NOT consistent with the spirit, purpose and intent of the Unified Development Ordinance because based upon the testimony and evidence presented by both the Petitioner and Remonstrators:

A) the height of the proposed tower, located on top of a hill, would not promote the purpose of the Unified Development Ordinance according to § 1.05; and,

B) the location of the proposed tower, located in a very scenic portion of Porter County would not promote the purpose of the Unified Development Ordinance according to § 1.05;

4) The Special Exception would not substantially and permanently injure the appropriate use of the neighboring property;

5) The Special Exception would NOT serve the public convenience and welfare because based upon the testimony and evidence presented by both the Petitioner and the Remonstrators:

A) the necessity of the tower and accompanying cellular service was not sufficiently proven as to demonstrate the promotion of the public convenience and welfare; and

B) the welfare and convenience of the citizens of Porter County would be negatively affected by the impact on the aesthetic qualities of the proposed tower location; and

C) the welfare and convenience of the citizens of Porter County would be negatively affected by the unknown health hazards associated with cellular towers;

D) the welfare and convenience of the citizens of Porter County would be negatively affected in that the health and safety of skiers and other users of the hill would be in danger.

The [BZA] found and made the following additional findings of fact, pursuant to § 10.02(H)(2) of the Porter County Unified Development Ordinance:

The [BZA] is not authorized to approve the new tower because i[t] did not find that the tower could not be accommodated on an existing or approved tower or building within a two-mile search radius of the proposed tower due to one of more of the reasons listed in § 10.02(H)(2)(a).

A) The Petitioner did not prove, by a qualified and licensed Indiana professional engineer, that the proposal would exceed the structural capacity of the existing structures;

B) The Petitioner did not prove, by a qualified and licensed Indiana professional engineer, that the planned equipment would cause interference with existing towers;

C) The Petitioner did not prove, by a qualified and licensed Indiana professional engineer, that the existing towers could not accommodate the proposal at a necessary height;

D) The Petitioner did not prove, that other unforeseen reasons make it unfeasible to locate the proposed equipment on existing towers.

(Appellant's App. pp. 321–22).

On August 14, 2008, the SBA filed its Verified Petition for Writ of Certiorari with the trial court. On February 17, 2009, the trial court conducted a hearing. Thereafter, on September 15, 2009 the trial court entered its Findings of Fact and Conclusions of Law concluding that "there was no substantial evidence of probative value which could constitute a competent foundation for the [BZA's] decision." (Appellant's App. pp. 15–16). As a result, the trial court reversed the BZA's decision and ordered the Board to grant SBA's Application for a Special Exception.

The BZA now appeals. Additional facts will be provided as necessary.

*DISCUSSION AND DECISION*

The BZA contends that the trial court erred by reversing its decision and granting the SBA's request for a Special Exception. Specifically, the Board argues that pursuant to the Porter County Unified Development Ordinance (Unified Development Ordinance), the BZA must determine whether the requested Special Exception complies with the spirit, purpose, and intent of the Ordinance and whether the Special Exception will serve the public convenience and welfare. The BZA maintains that because these requirements lack concrete standards by which the SBA could prove that the Board acted outside of its discretion, its decision should not have been disturbed.

### I. *Procedural Error*

■ As a threshold matter, we must address SBA's contention that the BZA failed to enter its findings within five days of its ruling, as required by Indiana Code section 36–7–4–919(f). Judicial review of an administrative decision is limited to whether the agency possessed jurisdiction over the subject matter, whether the decision was made pursuant to the proper procedures, whether the decision was arbitrary and capricious, whether the decision was in violation of any constitutional, statutory, or legal principles, and whether the decision was supported by substantial evidence. *Ripley County Bd. of Zoning Appeals v. Rumpke of Ind., Inc.*, 663 N.E.2d 198, 203 (Ind.Ct.App.1996), *trans. denied.*

■ The record reflects that at the close of its July 16, 2008 hearing, the BZA denied SBA's request for a Special Exception and stated that this vote incorporated "the findings of fact as prepared by the [BZA's] counsel" although no written findings of fact were in existence at the time of the vote. (Appellant's App. p. 228). Thereafter, twelve days after the hearing, on July 28, 2008, the BZA sent SBA a letter notifying it of the Board's denial of the Application for a Special Exception. The letter also indicated that the BZA's findings of fact were in the BZA's file. However, the findings of fact were blank. Ultimately, the findings of fact were not approved by the BZA until its September 17, 2008 meeting and then not signed until its October 7, 2008 meeting.

While we agree with SBA that the BZA did not make timely findings as required by Ind.Code § 36–7–4–919(f), we do not find that this delay denied SBA due process. SBA has not alleged how it was prejudiced by the BZA's delay in entering written findings of its decision beyond noting that the BZA's "failure to comply with its statutory procedures was an abuse of discretion." (Appellee's Br. p. 11). As no prejudice was demonstrated, we conclude that the BZA's delay in entering written findings was harmless error. *See Ripley County*, 663 N.E.2d at 205; *see also Town of Merrillville Bd. of Zoning Appeals v. Pub. Storage, Inc.*, 568 N.E.2d 1092, 1093 n. 2 (Ind.Ct.App.1991), *trans. denied.*

### II. *Special Exception*

Turning to the substantive arguments of the case, the BZA contends that the trial court erred in its determination that there was no substantial evidence of probative value which could constitute a competent foundation for the BZA's decision.

### A. *Standard of Review*

■ When reviewing a decision of a zoning board, we are bound by the same standard of review as the *certiorari* court. *S & S Enterprises, Inc. v. Marion County Bd. of Zoning Appeals*, 788 N.E.2d 485, 489 (Ind.Ct.App.2003), *trans. denied.* Indiana Code section 36–7–4–1003 provides in pertinent part that "[e]ach person aggrieved by a decision of the board of zoning appeals or the legislative body may file with the circuit or superior court of the

county in which the premises affected are located, a verified petition setting forth that the decision is illegal in whole or in part and specifying the grounds of the illegality." Thus, when reviewing a decision of a board of zoning appeals, the trial court must determine if the board's decision was incorrect as a matter of law. *Brownsburg Conservation Club, Inc. v. Hendricks Co. Bd. of Zoning Appeals,* 697 N.E.2d 975, 977 (Ind.Ct.App.1998). The trial court may not conduct a trial *de novo* or substitute its decision for that of the board. *Id.* Our review is governed by the same considerations. *Id.* However, findings of fact are required to ensure adequate judicial review of administrative decisions. *Id.* at 978.

▮ In the context of zoning adjudications, we will set aside the board's specific findings only if they are clearly erroneous, meaning the record lacks any facts or reasonable inferences supporting them. *Network Towers, LLC v. Bd. of Zoning Appeals of LaPorte Co., Ind.,* 770 N.E.2d 837, 844 (Ind.Ct.App.2002). A decision is clearly erroneous when it lacks substantial evidence to support it. *Town of Beverly Shores v. Bagnall,* 590 N.E.2d 1059, 1061 (Ind.1992). When determining whether an administrative decision is supported by substantial evidence, the reviewing court must determine from the entire record whether the agency's decision lacks a reasonably sound evidentiary basis. *Crooked Creek Conservation and Gun Club, Inc. v. Hamilton Co. North Bd. of Zoning Appeals,* 677 N.E.2d 544, 548 (Ind.Ct.App. 1997), *reh'g denied, trans. denied.* Thus, we have noted that evidence will be considered substantial if it is more than a scintilla and less than a preponderance. *Id.* at 549. In other words, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.*

▮ Because the instant case involves the proposed construction of a telecommunications tower, the Telecommunications Act of 1996, 47 U.S.C. § 151 *et seq.* (TCA) is implicated. The TCA "provides protections from irrational or substanceless decisions by local authorities." *Southwestern Bell Mobile Sys., Inc. v. Todd,* 244 F.3d 51, 57 (1st Cir.2001). Nonetheless, the TCA does not federalize telecommunications land use law; instead, Congress struck a balance between localities and personal wireless service providers. *Id.* Under the TCA, local governments retain control over decisions regarding the placement, construction, and modification of personal wireless service facilities. 47 U.S.C. § 332(c)(7)(A); *see also id.*

▮ However, local government's control is subject to substantive and procedural limitations such that local authorities may not unreasonably discriminate among providers of functionally equivalent services or effectively prohibit the provision of personal wireless services. *Southwestern Bell Mobile Sys., Inc.,* 244 F.3d at 57. Accordingly, the TCA co-exists with the authority granted to local boards of zoning appeals and, as before this court, specifies that a zoning board decision must rest upon substantial evidence. 47 U.S.C. § 332(c)(7)(B)(iii).

### B. *Analysis*

▮ We have previously noted that "[a] special exception is a use permitted under the zoning ordinance upon the showing of certain statutory criteria and the granting of a special exception is mandatory once the petitioner shows compliance with the relevant statutory criteria." *S & S Enterprises, Inc.,* 788 N.E.2d at 490. In *Crooked Creek,* we clarified that while some special exception ordinances are regulatory in nature and require a petitioner to show compliance with certain regulatory

requirements (*e.g.* structural specifications), providing the zoning board with no discretion, other special exception ordinances provide a zoning board with a discernable amount of discretion (*e.g.* those which require an applicant to show that its proposed use will not injure the public health, welfare, or morals). *Crooked Creek*, 677 N.E.2d at 547. In other words, when the zoning ordinance provides the board of zoning appeals with a discernable amount of discretion, the board is entitled, and may even be required by the ordinance, to exercise its discretion. *Id.* at 548. When this is the case, the board is entitled to determine whether a petitioner has demonstrated that its proposed use will comply with the relevant statutory requirements. *Id.*

The Special Exception Ordinance implicated in the present case confers upon the BZA a significant amount of discretion. The ordinance requires the Board to find a variety of facts before issuing a Special Exception. For example, the BZA must find that the specifically excepted use "shall not substantially and permanently injure the appropriate use of the neighboring property" and that the Special Exception "shall serve the public convenience and welfare." Unified Development Ordinance 10.22(H)(2)(8)(a). It is clear that these criteria, having no absolute objective standards against which they can be measured, involve discretionary decision making on the part of the Board.

In reaching its decision to deny SBA's request for a Special Exception, the BZA concluded that (1) based on the height and location of the proposed telecommunications tower, the Special Exception is not consistent with the spirit, purpose and intent of the Unified Development Ordinance; and (2) the aesthetic qualities, unknown health hazards, and safety of the tower and cellular service did not serve the

public welfare and convenience. Additionally, the BZA noted that it was not authorized to approve the new tower because it could not be determined that the tower could not be accommodated on an existing or approved tower or building within a two-mile search radius of the proposed tower.

 The burden of demonstrating satisfaction of the relevant statutory criteria rests with the applicant for a special exception. *Crooked Creek*, 677 N.E.2d at 548. This court has been cautious to avoid the imposition upon remonstrators of an obligation to come forward with evidence contradicting that submitted by an applicant. *Id.* Since remonstrators need not affirmatively disprove an applicant's case, a board of zoning appeals may deny an application for a special exception on the grounds that an applicant has failed to carry its burden of proving compliance with the relevant statutory criteria regardless of whether remonstrators present evidence to negate the existence of the enumerated factors. *Id.* However, since the BZA determined that SBA was not entitled to its Special Exception, and based its determination in large part upon the evidence and remarks presented by the remonstrators, we will determine whether the BZA's decision was based upon substantial evidence by also examining the sufficiency of the evidence presented by the remonstrators. *See also id.*

### 1. *Spirit, Purpose, and Intent of the Ordinance*

 Initially, the BZA found that the construction of a cellular tower would not be

consistent with the spirit, purpose and intent of the Unified Development Ordinance because based upon the testimony and evidence presented by both the Petitioner and Remonstrators:

A) the height of the proposed tower, located on top of a hill, would not promote the purpose of the Unified Development Ordinance according to § 1.05; and,

B) the location of the proposed tower, located in a very scenic portion of Porter County would not promote the purpose of the Unified Development Ordinance according to § 1.05.

(Appellant's App. p. 173).

Pursuant to Chapter 5.70 of the Unified Development Ordinance, a telecommunication tower shall not exceed 199 feet in height. As conceded by the BZA, SBA complied with these height requirements. However, the BZA now relies on testimony provided by remonstrators at the hearing that the telecommunications tower would sit atop a hill with a height of 150 feet above the roadway and surrounding houses, resulting in an aggregate tower height of 350 feet. We agree with SBA that a telecommunications tower built in accordance with the height requirements of the Unified Development Ordinance cannot be held to be inconsistent with the purpose and spirit of the Ordinance.

Secondly, relying on an aesthetic argument, the BZA denied the Special Exception because the tower would be located in a very scenic portion of the County. SBA presented evidence that the proposed tower's site would be near a ski lodge, which is used only during winter. One Remonstrator objected, stating "my biggest concern right now is it's just not compatible. It's a very scenic area in the [c]ounty." (Appellant's App. p. 227). Besides this generalized objection, no evidence was presented that the proposed tower impacted the natural features of the area or the site is officially designated as a scenic area.

Established case law interpreting the Telecommunications Act has made clear that "generalized aesthetic concerns do not justify the denial of a permit." *PrimeCo Personal Communications, Ltd. Partnership v. City of Mequon,* 352 F.3d 1147, 1150 (7th Cir.2003).

2. *Public Welfare and Convenience*

■ Next, the BZA determined that granting SBA a Special Exception would not serve the public welfare and convenience. In reaching this conclusion, the BZA relied on three factors: the aesthetic qualities,[1] unknown health hazards, and safety of the tower and cellular service for the users of the ski lodge.

During its presentation at the hearing, SBA provided detailed information about the necessity of the new tower because of gaps in coverage. SBA clarified that the tower met all statutory setback requirements and would be constructed in accordance with all structural standards and design requirements.

In turn, remonstrators asserted that:

Steel, when it gets extremely cold, is subject to high loads like strong winds, like this tower would be exposed to would crack like glass when it gets cold. It's called brittle fracture. As long as the design and the construction of steel are specified there should be very little possibility of catastrophic failure, but, as we know from the bridge at Minneapolis and the levees in New Orleans and, most famously, the unsinkable Titanic, mistakes are made. If this tower does incur catastrophic failure, it most likely will be in the winter when the ski hill is active.

(Appellant's App. p. 218).

Responding to this very general and personal concern, SBA pointed out that:

---

1. We already discussed the aesthetic impact argument above. As such, we will not address it here.

These towers are built per ANSO Section 222, Structural Steel Erection Standards. We meet all requirements when building the towers. Foundations are anywhere from 25 to 30 feet deep in the ground. A lot of times during the hurricanes that happened in the South, the only things standing [were] the towers. The towers are also designed to collapse within themselves where they are not collapsing over like a pendulum. So, the safety issues that were brought up by the remonstrator are not issues. We meet all codes and standards and we would even have to go through the building permit process to make sure we met all those standards through our tower design.

(Appellant's App. p. 222).

Also, with respect to the health issue, a remonstrator observed during the hearing that:

Another safety concern I have is radio frequency radiation. No recent studies I know of have concluded that cell tower radio frequency radiation is a hazard to your health, but [it] is an area of active research.

(Appellant's App. p. 218). In response to this—again—generalized concern, the SBA stated

There are no health issues associated with this. The federal government actually mandates that through the [T]elecommunications [A]ct that that is not a part of the decision process when making a decision on a new wireless communications facility.

(Appellant's App. p. 222). Indeed, the Telecommunications Act of 1996, in 47 U.S.C. § 332(c)(7)(B)(iv), prohibits the denial of telecommunication facilities based upon the environmental and health effects of radio frequency emissions.

### 3. Co-locating on Existing Tower

■ Lastly, the BZA noted that it was not authorized to approve the new tower because it failed to find that the tower could not be accommodated on an existing or approved tower or building within a two-mile search radius of the proposed tower. The BZA reached this conclusion by relying on Chapter 10.02(H)(1) of the Unified Development Code, which provides that

No new telecommunication tower for a commercial wireless communications service shall be approved unless the Board of Zoning Appeals finds the telecommunication equipment planned for the tower cannot be accommodated on an existing or approved tower or building within a two-mile search radius of the proposed tower due to one (1) or more of the following reasons:

i) The planned equipment would exceed the structural capacity of the existing or approved telecommunication tower or buildings, as documented by a qualified and licensed Indiana professional engineer, and the existing or approved tower cannot be reinforced, modified or replaced to accommodate planned or equivalent equipment at a reasonable cost.

ii) The planned equipment would cause interference, materially impacting the usability of other existing or planned equipment at the telecommunication tower or building, as documented by a qualified and licensed Indiana professional engineer, and the interference cannot be prevented at a reasonable cost.

iii) Existing or approved telecommunication towers and buildings within the two-mile search radius cannot accommodate the planned

equipment at a height necessary to function reasonably as documented by a qualified and licensed Indiana professional engineer.

iv) Other unforeseen reasons that make it unfeasible to locate the planned telecommunication equipment upon an existing or approved tower or building.

Initially, it should be noted that unlike the other requirements for the Special Exception discussed in this opinion, Chapter 10.02(H)(1) of the Unified Development Code is not discretionary but rather regulatory in nature and requires the SBA to show compliance with very specific regulatory requirements. As such, Chapter 10.02(H)(1) of the Unified Development Code includes objective standards against which SBA's compliance can be measured and does not involve discretionary decision making on the part of the Board.

Furthermore, unlike the BZA's assertion, not all requirements included in Chapter 10.02(H)(1) of the Unified Development Code require documentation by a qualified and licensed Indiana professional engineer. Looking at this Code requirement, it is very clear that the engineer qualifier element is not part of the introductory paragraph but instead is only specified in the first three requirements of Chapter 10.02(H)(1), with the final requirement—other unforeseen reasons—not mandating the vouching by a qualified and licensed Indiana professional engineer.

During the BZA hearing it was determined that four existing towers were located within the two-mile search radius of the proposed SBA site. SBA testified that

> These existing towers that are on the East side of that search ring are too close to our existing coverage that we have out of the area called Valparaiso center. So, what that does is that overlaps coverage, and also puts—if I collocated on any one of those three towers,

it would put me too close to an existing tower that we currently have service at that would cause interference issues. And it would not get into the coverage areas of where we need to improve our coverage.

(Appellant's App. p. 221). With respect to the fourth tower, the NIPSCO Transmission Tower, SBA provided a letter from NIPSCO refusing collocation of SBA on the NIPSCO Tower because of security and safety concerns.

Based on our review of Chapter 10.02(H)(1) of the Unified Development Code, we agree with the trial court that only one of the reasons stated in this Chapter needs to apply to justify the construction of a new tower. Here, the SBA provided substantial evidence that the current, existing towers within the two-mile search radius do not resolve the coverage gap and thus make it unfeasible to locate the planned telecommunication equipment upon an existing tower.

Overall, in light of the evidence before us, we find that the evidence upon which the BZA based its denial of SBA's request for a Special Exception was devoid of probative evidence. For this reason, we find that the BZA's findings and determination denying SBA's grant of a Special Exception are clearly erroneous. Thus, we affirm the trial court.

### CONCLUSION

Based on the foregoing, we find that the BZA's decision to deny SBA's request for a Special Exception is not supported by substantial evidence.

Affirmed.

MATHIAS, J., and BRADFORD, J., concur.